CHARLES A. L. GRAM ET AL., APPELLANTS, *v.* THE PRUS-
SIA EMIGRATED EVANGELICAL LUTHERAN GER-
MAN SOCIETY, ETC., AND OTHERS, RESPONDENTS.

*Religious Corporations—Trustees—Cestui que trust—Change of Doctrine.*

A religious society incorporated under the General Act of 1813 (April 5),
is a corporation of all the members of such society, and not of the trustees,
or a limited portion of the members.

The trustees of such society cannot take a trust for the sole benefit of mem-
bers of the church, as distinguished from other members of such congregation.

Nor does such statutory incorporation contemplate or recognize the devo-
tion of the corporate property to the support of a perpetual and unchangeable
system of religious faith and doctrine.

A majority of the corporators, without respect to their religious tenets,
have the entire control over the revenues of the corporation.

*G. D. Lamott* for the Appellants.
*P. L. Ely* for the Respondents.

PARKER, J.—We may assume, from the facts found by the ref-
eree, that the religious incorporation named as one of the De-
fendants in this case received and held, so far as it might legally
do so, the property which it held, under certain trusts, for the
propagation and support of the German Evangelical Lutheran
faith, including doctrines and government, as held and practised
by the German Evangelical Lutheran churches under the Synod
of Buffalo and its ministry.

Also, that the action of the Defendants' trustees, in prohibit-
ing the Plaintiff Gram, pastor of the church, from performing
his functions as such pastor in the church edifice, and excluding
the Plaintiff Hoge, the school-teacher, chorister, and sexton of
said church, from the performance of his functions as such
teacher, chorister, and sexton, was in violation of the rules of
ecclesiastical government of the Lutheran churches, and of the
rights of the Plaintiffs under the same.

The referee, conceding these facts, held, as a conclusion of law,
that the Plaintiffs were entitled to no relief, for the reason that

the trusts sought to be created were unauthorized by law, and void; and the property vested in, and was held by, the said incorporation unaffected thereby.

Unless the Plaintiffs can sustain the trusts which they allege the Defendants have violated without invoking to their aid the law of *charitable uses*, as an existing operative system, independent of our statutes of uses and trusts, they cannot under the law, as settled by the decisions of this court, sustain them. The subject of charitable uses was very thoroughly examined in the recent case of Bascom *v.* Albertson (34 N. Y. 584), and the conclusion clearly and definitely reached, that they are not excepted from the provision of our statute that uses and trusts, except as authorized and modified by the statute itself, are in this State abolished.

We are brought then to the inquiry, whether the trusts in question can be sustained as being authorized by statute. Manifestly, no authority for the creation or allowance of such trusts as these can be found in the article of the Revised Statutes entitled "Of uses and trusts." Is there anything in the charter of this religious incorporation by which they can be sustained?

The society was incorporated under the general act providing for the incorporation of religious societies, passed April 5, 1813. This act was not repealed by the Revised Statutes, but has remained in operation from the time of its passage to the present time, and, undoubtedly, whatever powers are given by it to the religious societies incorporated under it, are entirely unaffected by the provisions of the Revised Statutes in relation to trusts and perpetuities (Tucker *v.* St. Clement's Church, 3 Sand. S. C. 242; S. C. 4 Seld. 558). Every conveyance of lands to such corporations creates a perpetuity, and necessarily implies a trust, although none be expressed. The trusts, however, upon which the trustees of such societies hold the property committed to their charge, cannot be referred to any class of those cases which are authorized by the Revised Statutes, but are dependent entirely upon the provisions of the Act of 1813, above referred to.

It is necessary, then, to ascertain what is the scope and intent

of that act, in reference to the property which it allows the religious societies incorporated under it to receive and hold. The trustees of every such society are, by the fourth section of the act, authorized to take into their possession all the temporalities belonging to the society, whether real or personal estate, and whether given, granted, or devised directly to the society, or to any other person for their use; and to receive, hold, and enjoy all churches, meeting-houses, parsonages, and burying-places, with the appurtenances and estates belonging to the society, in whatsoever manner the same may have been acquired, or in whose name soever the same may be held, as fully and amply as if the right or title thereto had originally been vested in the said trustees; and also to purchase and hold other real and personal estate, and to demise, lease, and improve the same for the use of such society, or other pious uses; also to repair and alter the churches or meeting-houses, and to erect others if necessary, and to erect dwelling-houses for the use of their ministers, and school-houses and other buildings for the use of the society, and to make rules and orders for managing the temporal affairs of the society, and to dispose of all moneys belonging thereto, and to regulate and order the renting of the pews in their churches or meeting-houses, and the perquisites for the breaking of ground in the cemetery or churchyards, and in the churches and meeting-houses, for burying the dead; and all other matters relating to the temporal concerns and revenues of the society.

The third section provides the mode by which a religious society may become incorporated at a meeting of the male persons of full age belonging to the church, congregation, or society, held at the church, meeting-house, or other place where they statedly attend for divine worship; and also who are entitled to vote for trustees at the election then held, being every male person of full age who has statedly worshipped with such church, congregation, or society, and has formerly been considered as belonging thereto. And the seventh section provides, in regard to voters at every succeeding election of trustees, that none shall vote except those

who have been stated attendants on divine worship in the said church, congregation, or society, at least one year before such election, and shall have contributed to the support of the church, congregation, or society, according to the usages and customs thereof.

In the case of Robertson *v.* Bullions (1 Kern. 243), in determining the questions presented to the Court, in respect to the removal of trustees of religious corporations, and their obligations to account, it became necessary to pass, to some extent, upon the powers, duties, and functions of such trustees, the tenure by which they hold the corporate property, and the nature of the trusts committed to their charge. One of the questions arising in the case, and which was discussed and decided, was, whether the trustees alone constitute the corporation, and, as such, hold the property in trust for the society existing as a voluntary association, their relation to the society being simply that of a trustee to his cestui que trust, or not, and it was held " that a religious corporation, under our statute, consists not of the trustees alone, but of members of the society; that the society itself is incorporated, and not merely the trustees and its members are the corporators; that the relation of the trustees to the society is not that of a private trustee to the cestui que trust, but they are the managing officers of the corporation, and trustees in the same sense in which the president and directors of a bank or railroad company are trustees, and are invested, in regard to the temporal affairs of the society, with the powers specifically conferred by the statute, and with the ordinary discretionary powers of similar corporate officers."

It was also held in that case " that the trustees of a religious corporation, under our statute, cannot take a trust for the sole benefit of members of the church as distinguished from other members of the congregation, nor for the benefit of any portion of the corporators to the exclusion of others, no trust being authorized by the statute except for the use and benefit of the whole society."

Now, although it is evident from the provisions and general

scope of the act, that the use to which the property of the society, in the hands of the trustees, is to be devoted, is the promotion of religion through the observance of divine worship, and the ministrations and teachings of the ministers and other teachers of religion, and undoubtedly any diversion of the property of the society by the trustees from this general object would be such an abuse of their trust as a court of equity would correct; yet it is equally evident that the statute, as thus construed by the Court, does not contemplate or recognize a devotion of such property which shall be absolutely perpetual and unchangeable to the support of a particular system of religious faith and doctrine, or ecclesiastical rule and discipline.. If the relation between the trustees and the society is not that of a trustee to the cestui que trust, but the society itself is the corporation, and if the trustees cannot take and hold a trust for the sole benefit of a portion of the corporators to the exclusion of others, it seems to follow that a trust in favor of persons of a particular religious faith is not within the scope of the statute. The idea of such a trust neces sarily implies that if a division occurs in the society holding the same faith at the beginning, the portion adhering thereto must remain the cestui que trusts, to the exclusion of those who do not so adhere; and the trustees must administer the property exclusively for them. This, as we have seen it, is held in the case last cited, and, as is plain from the statute, cannot be done. And I think the additional proposition stated by Judge Selden, and concurred in by three of his associates in that case, logically follows from those which were held and decided, to wit : " That the trustees of a religious corporation in this State cannot receive a trust limited to the support of a particular faith or a particular class of doctrines, for the reason that it is inconsistent with those provisions of the statute which give to the majority of the corporators, without regard to their religious tenets, the entire control over the revenues of the corporation."

This construction was sustained in the case of Petty v. Tooker (21 N. Y. 267). That case involved the inquiry whether the trustees and a majority of the society could change from Congre-

gationalists to Presbyterians, and retain possession of the church property against those who adhered to the faith of the founders of the church and society, and it was held without dissent that they could: "That corporations formed under the third section of the Act of 1813 have no denominational character, nor can any such character be engrafted upon them. That portion of the members organized into a separate body called the church may belong to a peculiar denomination, but it has no power to impress its distinctive character upon the corporation, so as to render it ineffaceable by the voice of a majority of the corporators."

Now, the trust sought to be created in the case at bar was a trust limited to the support of a particular religious denomination, to such parts of the society as should adhere to the doctrines, faith, and government of the Evangelical Lutheran Church, with the unaltered Augsburg Confession, and remain subject to the religious government of the synod of Buffalo and its ministry. This, it is evident, is a trust not allowable under the construction of the statute which has been settled by this court.

The action of the Defendants' trustees, in excluding the Plaintiff Gram from the church edifice and the exercise of his functions as pastor therein, and the Plaintiff Hoge from the schoolhouse and the discharge of his duties as teacher therein, is found by the referee to have been under the direction of a majority of the members of the church and corporation.

There is nothing, therefore, in the acts of the trustees complained of which the Court can regard as a breach of trust or violation of duty. The referee was right in his decision that the Plaintiffs were entitled to no relief, and in dismissing their complaint.

The judgment appealed from should be affirmed, with costs.

All concur.

Affirmed.

SCRUGHAM, J., not voting.

JOEL TIFFANY,
State Reporter.