CAPE and others, Appellants, vs. PLYMOUTH CONGREGATIONAL CHURCH and others, Respondents.

*January 16—March 21, 1903.*

*Religious societies: Secession of majority: Right to use building: Injunction: Parties: Trustees.*

1. Where a majority of a religious society has withdrawn therefrom and organized a new church of a different denomination, the minority, adhering to the original society, are entitled to the use and occupation of the church building held in trust for said society, and the new church and its trustees may be restrained from interfering with such use.

2. The action to restrain interference with its use and occupation of the church building may be maintained by the original society, and the trustees who hold the legal title in trust for it are not necessary parties plaintiff.

APPEAL from an order of the circuit court for Iowa county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

This is an appeal from an order sustaining a demurrer to the third amended complaint, which alleges that March 22, 1848, one Jabez Wilson, then the sole owner of the premises described, made a deed thereof to Samuel Hosking, John Hosking, John Lumley, Edward Thomas, Benjamin Thomas, Thomas Jenkins, S. A. Brownell, Joseph Ward, John Todd, Joseph Vincent, James Hendy, and William James, of Dodgeville, reciting:

"Whereas heretofore the citizens of Dodgeville have erected a church by subscription, called the Dodgeville Republican Church, in which each subscriber holds an interest in proportion to the amount subscribed by him, and the" above-named grantees have been elected trustees thereof by the subscribers, "and it is agreed and understood by and between said subscribers and parties that the society of Wesleyan Methodists of Dodgeville shall have the use of said church as follows, to wit: From half past ten o'clock in the morning to half past twelve, and at six in the evening on each successive Sabbath, and also on every Wednesday evening: With the above reservation, the said church shall be open at all times to ministers of other denominations, to scientific lectures, lectures on temperance, and for all other purposes of a strictly moral tendency: Should the Wesleyan Methodist Society withdraw their services, the said trustees shall appoint some other religious denomination or denominations to fill the vacancy or supply the services so withdrawn: As often as a vacancy shall occur in said trust by the death or removal from the county of one of its members, a majority of the surviving trustees shall elect a new trustee at a meeting called for the purpose by said trustees, and of which one week's notice shall be given."

The deed then grants the premises described to the said trustees and their successors in office forever, in trust for the

use of the said Republican Church, its subscribers, and *the uses before mentioned.* The deed contains a warranty of title to the said trustees of the Republican Church, and their successors in office and assigns forever, against the lawful demands of all persons.

Other allegations of the complaint are sufficiently stated in the opinion. The complaint prays judgment that the defendants, and each and all of them, and all persons claiming under them, or either of them, be perpetually enjoined from using or occupying said church building for the purposes of religious worship according to the religious tenets or under the church government of the Congregational Church; that they, and each of them, be enjoined from interfering in any manner with the use and occupation of said church building by the Primitive Methodist Society of Dodgeville for the purposes of religious worship according to the forms, rules, usages, practices, and doctrines of said society; that the right of the Primitive Methodist Society of Dodgeville to so use and occupy said church building to the exclusion of the defendants and all persons claiming under them, or either of them, be established and declared.

For the appellants there was a brief by *Reese, Carter & Mason* and *Spensley & McIlhon,* and oral argument by *Vroman Mason* and *Calvert Spensley.*

For the respondents there was a brief by *Aldro Jenks* and *Smelker & Smelker,* and oral argument by *J. P. Smelker* and *Mr. Jenks.*

The following opinion was filed February 3, 1903:

CASSODAY, C. J. It appears from the complaint that in March, 1848, the owner of the lot in question conveyed the same to the twelve persons therein named, as trustees of the Dodgeville Republican Church, and to their successors in office forever, in trust for the use of said church, its subscribers, and the uses thereinbefore mentioned. Prior to that convey-

ance a church building had already been erected thereon by subscription, in which each subscriber held an interest in proportion to the amount subscribed by him. The deed of trust expressly secured to "the Society of Wesleyan Methodists of Dodgeville" the use of the church "from half past ten o'clock in the morning to half past twelve, and at six in the evening of each successive Sabbath, and also on every Wednesday evening," and expressly provided that, "should the Wesleyan Methodist Society withdraw their services, the said trustees" should "appoint some other religious denomination or denominations to fill the vacancy or supply the services so withdrawn." The grantees in the deed accepted such trust, and agreed to relinquish the control of the building to the Society of Wesleyan Methodists in case it would pay and discharge a debt on the church of $150, which it did in 1849. In the same year the Society of Wesleyan Methodists withdrew their services from the church building, and thereupon the trustees, under the provisions of the deed, appointed the Dodgeville Primitive Methodist Society to fill the vacancy caused by such withdrawal, in consideration whereof that society agreed to refund and did refund to the Society of Wesleyan Methodists the $150 so paid by it; and the trustees, in consideration thereof, relinquished to the Dodgeville Primitive Methodist Society the control of the church building and lot for its exclusive use and occupancy. In 1863 that society built a new church building on the same lot, and that building and the old building were burned down and entirely consumed in 1879. In 1880 that society erected upon the same lot a new church edifice at an expense of $6,500, and the same was dedicated to religious worship and uses the same year by that society. The same society continued to occupy such new church edifice as a place of public Christian worship from 1880 to 1897.

In February, 1897, a majority of the members of the Dodgeville Primitive Methodist Society organized and in-

corporated the defendant *Plymouth Congregational Church,* and thereupon took exclusive possession of the church building and lot, and used the same as a place of religious worship, and thereupon wholly excluded therefrom the Dodgeville Primitive Methodist Society and the other members thereof, constituting a minority of its members. The Dodgeville Primitive Methodist Society has had a board of trustees ever since 1849, who have performed their duties and functions as such, and such trustees are plaintiffs in this action, and that society has not less than 100 members.

The complaint also alleges, in effect, that each of said churches and societies differs from any of the others in religious tenets, beliefs, practices, and organization, in many important respects; that the Dodgeville Primitive Methodist Society has always had distinguishing characteristics of material character wherein it differs, and still differs, from all other churches or religious sects, both as regards religious belief and church government; that, among other things, it submitted to the government and directions of a religious denomination known as the Western Conference of the Primitive Methodist Church, and was a member of and belonged to that conference; that such conference was and is the governing body of all Primitive Methodist Societies in Wisconsin, including the plaintiff, which is bound to submit thereto. On February 13, 1902, the Dodgeville Primitive Methodist Society and its trustees commenced this action against the *Plymouth Congregational Church* and its trustees for the purposes indicated.

There can be no question but that under the deed and the appointment mentioned, the Dodgeville Primitive Methodist Society succeeded to all the rights granted and secured to the Society of Wesleyan Methodists of Dodgeville, mentioned in the deed. It is therefore the same as though the deed had declared that the Dodgeville Primitive Methodist Society should "have the use of said church . . . from half

past ten o'clock in the morning to half past twelve, and at six in the evening of each successive Sabbath, and also on every Wednesday evening."

1. The important question in the case is whether a majority of the plaintiff society could rightfully withdraw therefrom and incorporate and organize the defendant church, and then exclude from the church building and lot the plaintiff society and the minority of its members. It is undisputed, and there can be no doubt, that the deed vested the legal title in the trustees therein named, subject to the trust imposed. The case is broadly distinguishable from those cases where the action of the majority pertains merely to the temporalities of the church. *Fadness v. Braunborg,* 73 Wis. 257, 286–288, 41 N. W. 84. It is not the case of two factions, each claiming to belong to the same sect, and each seeking to control the property or temporalities of the church. *Franke v. Mann,* 106 Wis. 134, 81 N. W. 1014. Here, according to the allegations of the complaint, a majority of the plaintiff society withdrew therefrom, and organized themselves into a church of an entirely different denomination. It is clear, upon principle, as well as authority, that the members of the plaintiff society who remained, although a minority, constitute the Dodgeville Primitive Methodist Society, and retained the property and rights of property belonging thereto. *Baker v. Fales,* 16 Mass. 488; *Miller v. Gable,* 2 Denio, 492; *Schnorr's Appeal,* 67 Pa. St. 138; *Happy v. Morton,* 33 Ill. 398; *Lawson v. Kolbenson,* 61 Ill. 405; *Mt. Zion B. Church v. Whitmore,* 83 Iowa, 138, 49 N. W. 81; *Lamb v. Cain,* 129 Ind. 486, 29 N. E. 13; *Smith v. Pedigo,* 145 Ind. 366, 33 N. E. 777, 44 N. E. 363; *Watson v. Jones,* 13 Wall. 679. In such cases it is within the province of a court of equity to protect the minority. In the first of the cases in this court, cited above, it was conceded that:

"It is not the province of courts of equity to determine mere questions of faith, doctrine, or schism, not necessarily

involved in the enforcement of ascertained trusts.  .  .  .
Courts deal with tangible rights, not with spiritual concep-
tions, unless they are incidentally and necessarily involved
in the determination of legal rights. Such trusts, when valid
and so ascertained, must, of course, be enforced." *Fadness
v. Braunborg,* 73 Wis. 293, 41 N. W. 95.

In the other it was said by my Brother MARSHALL, and in
effect held by the court, that:

"If officers temporarily in charge of the corporate affairs
divert its property from the legitimate uses of the corpora-
tion, as limited by the grant of such property to it, or the pur-
poses of its organization as regards the particular religious
faith it was organized to promote, a court of equity has
ample power to interfere to protect the minority; for as to
such matters the right of each member of the church society
is the equal of every other, and the rights of all are referable
to the terms of the trust upon which the corporation property
is held, which trust, as indicated, may be declared in the con-
veyance of the property to the corporation so far as not in-
consistent with its corporate powers, or by the articles of or-
ganization limiting and defining its rights and those of its
members." *Franke v. Mann,* 106 Wis. 118, 130, 81 N. W.
1014, 1018.

The fact that a majority of a religious society secedes from
a church and organizes a new church of a different denomi-
nation, does not entitle them to share in the benefits of the
fund or property held in trust for the original society. The
defendant church, not incorporated or organized until 1897,
and then as a different denomination, is here claiming that
it rightfully excluded the plaintiff society, which had been
in the undisputed possession of the church property under the
deed for nearly fifty years, and during that time had erected
two church buildings on the lot at great expense, besides
having paid $150 in consequence of an old debt upon first
taking such possession. The question is not before us as to
whether, under one clause of the deed, the church must re-
main "open at all times to ministers of other denominations,"
including the defendant, and "to scientific lectures, lectures

Cape v. Plymouth Congregational Church, 117 Wis. 150.

on temperance, and for all other purposes of a strictly moral tendency." To maintain this action, it is not essential that the plaintiffs are entitled to all the relief demanded in the complaint. We must hold that the complaint states a good cause of action; that upon the facts stated the plaintiff society has the right to use and occupy the church building, during the times mentioned in the deed, to the exclusion of the defendants and all persons claiming under them, or either of them; and that the defendants, and each of them, be enjoined from interfering with such use and occupation.

2. One ground of demurrer is that there is a defect of parties plaintiff, in that neither the trustees named in the deed, nor their successors in trust, are joined as plaintiffs, and that they are the only parties that can maintain this action. It is conceded by all that the legal title to the property is in such trustees. No attack is made upon that title. Neither of the parties to this action has any controversy with such trustees. There is no claim of any injury to or waste of any of the property. The controversy is wholly between the plaintiff society and the defendant church. The plaintiff society asks to be protected in the rights granted to it by the trust deed. The rule applicable seems to be that:

"Suits for the possession of real estate are properly brought by the party entitled to the possession, whether he be trustee or *cestui que trust*. . . . But the *cestui que trust,* if entitled to the possession, may in his own name sue a stranger therefor, or he may sue the trustee in ejectment. Suits to compel the proper execution of the trust may be instituted by the beneficiary, as the one most interested, or, in rare cases, by the settlor." 27 Am. & Eng. Ency. of Law, 282, 283, and cases there cited.

We find no defect of parties.

*By the Court.*—The order of the circuit court is reversed, and the cause is remanded with direction to overrule the demurrer and for further proceedings according to law.

A motion for rehearing was denied March 21, 1903.