MARIEN and others, Respondents, vs. EVANGELICAL CREED CONGREGATION OF MILWAUKEE and others, Appellants.

*September 6—September 24, 1907.*

*Religious societies: Diversion of property to inconsistent uses: Rights of members: Trusts and trustees: Injunction: Pleading: Demurrer.*

1. When a religious association acquires property, by gift or by purchase, for the maintenance and support of the faith of a recognized denomination or church, every member of the association

Marien v. Evangelical Creed Congregation, 132 Wis. 650.

has a right to resist the diversion of the property to other an-
tagonistic uses, whether secular or religious.

2. Those who hold the title to the property in such a case, whether
a corporation or the officers of the association, hold it charged
with a trust to apply it to the uses for which it was acquired;
and the courts will protect and enforce such trust.

3. Although no limitation or trust be imposed in terms by the
grantor, yet if the property be acquired by a religious associa-
tion itself connected with and devoted to one of the recognized
denominations or churches, especially if synodical, it usually
becomes charged with a trust as fully as if limited by the
grantor to use for such denomination.

4. The complaint in this case is *held* sufficiently to allege that de-
fendants are diverting property from the uses of a German
Evangelical church for which it had been acquired to the in-
consistent and antagonistic uses of an Evangelical Lutheran
church, and to state a cause of action for an injunction against
such misapplication of the property.

5. If a complaint states a cause of action a general demurrer thereto
should be overruled, even though the relief demanded goes be-
yond that which the court will grant.

APPEAL from an order of the circuit court for Milwaukee
county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

The appeal is by defendants from order overruling de-
murrer to the complaint, which is to the general effect that
they are members of the *Evangelical Creed Congregation,* or-
ganized in 1897, which had acquired by purchase certain real
estate and had erected church buildings thereon of large
value; that its property had been acquired for the purposes of
that church as a member of the Wisconsin District of the
German Evangelical Synod of North America for use in sup-
port of the creed, tenets, and polity of that organization; and
that the defendants, shortly before the commencement of this
action, had, by a majority vote of the corporation, attempted
to divert said property and pervert said corporation to the
support of an inconsistent and conflicting synod, faith, and
creed known as the Evangelical Lutheran Synod of Wiscon-
sin. Plaintiffs prayed, among other things, injunction against
said diversion of the church property.

For the appellants there was a brief by *Kanneberg &
Cochems,* and oral argument by *A. Kanneberg.*

For the respondents there was a brief by *Boden & Beu-
scher,* and oral argument by *Mr. F. X. Boden* and *Mr. W. F.
Adams.*

DODGE, J.   The only concern of courts with the differences
of creed or belief within or between religious organizations
is when some property or contract rights are involved and de-
mand protection.   It is, however, fully established by our own
court, in common with most others, that when property has
been acquired, whether by gift or purchase, for the mainte-
nance and support of the faith of any recognized denomina-
tion or church, every member of the association acquiring it,
corporate or unincorporated, has a right to resist its diversion
to other antagonistic uses, whether secular or religious, and
therefore those who hold the title or control, whether a corpo-
ration or the officers of the association, hold it charged with a
trust to apply it to the uses for which acquired and not to in-
consistent ones.   Such trusts the courts will protect and en-
force. *Fadness v. Braunborg,* 73 Wis. 257, 293, 41 N. W. 84;
*Franke v. Mann,* 106 Wis. 118, 81 N. W. 1014; *Cape v.
Plymouth Cong. Church,* 117 Wis. 150, 93 N. W. 449; *S. C.*
130 Wis. 174, 109 N. W. 928.   Although there be no limita-
tion or trust in terms imposed by the grantor, yet if the prop-
erty be acquired by a religious association itself connected
with and devoted to one of the recognized denominations or
churches, especially if synodical, it usually becomes charged
with a trust as fully as if limited by the grantor to use for
such denomination.   While the grantor from whom the prop-
erty is purchased may make no such qualification of his
grant, there can be no doubt of the intention of those who
supply the money, and thus in effect donate the property,
that their contributions are to be used for the purposes for
which the association is organized.   *Watson v. Jones,* 13

Wall. 679; *Ferraria v. Vasconcellos*, 31 Ill. 25, 54; *Smith v. Pedigo*, 145 Ind. 361, 33 N. E. 777, 44 N. E. 363; *Hale v. Everett*, 53 N. H. 1, 76; *Mt. Helm B. Church v. Jones*, 79 Miss. 488, 30 South. 714; *Mt. Zion B. Church v. Whitmore*, 83 Iowa, 138, 49 N. W. 81; *Park v. Chaplin*, 96 Iowa, 55, 65, 64 N. W. 674; *Gram v. Prussia E. E. L. G. Soc.* 36 N. Y. 161, 162; *Franke v. Mann, supra.*

The complaint clearly alleges that the defendant corporation was organized to support the faith of, and to be connected with, the German Evangelical Synod of North America, a synodical ecclesiastical organization as broad as the United States; and especially with the division thereof known as the Wisconsin District of the German Evangelical Synod of North America. When the property was purchased for and devoted and dedicated to such purposes, the corporation and its officers took title and control charged with a trust, so that they could not lawfully divert it to inconsistent uses against the protest of any member. The next question, therefore, is whether the complaint shows such diversion. The allegations are prolix, but a few only need be recited. It is alleged that for centuries there have been two organized associations of churches, commencing in Germany and extending throughout the United States, one known as the German Evangelicals, or as the Evangelical Church, and the other as the Evangelical Lutherans, and that there exists the Evangelical Lutheran Synod of Wisconsin, distinct and separate from the Wisconsin District of the German Evangelical Synod of North America, and in some respects in conflict therewith; that, especially, the former, which we shall hereafter designate as the Lutheran church or synod, adopts certain writings in and shortly after the time of Martin Luther as conclusive expression of the creed and inerrant interpretation of the Scriptures, and rejects certain other writings which are adopted by what was called the German Reformed Church as correct interpretation of the Scriptures. The

Evangelical Church, upon the other hand, recognizes equally said symbolical books of the Lutherans and of the Reformed Church, but accords to neither conclusiveness as to the doctrines therein promulgated, or as to the interpretation of the Scriptures, but approves them as the work of human minds subject to what may be deemed either by the individual or by the church authorities the true meaning of the Scriptures themselves. The Lutherans prescribe certain books as necessary to be used in Sunday schools, confessions of faith, and the like, while the Evangelicals approve and use other books and writings. The name "Lutheran" is a distinguishing characteristic of the churches adhering to the former creed, and, according to the allegations of the complaint, they yield almost inspirational authority to the writings of Dr. Luther. Many other items of difference between the creeds and discipline of these respective widespread organizations are set forth in the complaint and alleged to be crucial and important items of faith for their respective adherents. These distinctions were discussed and held material in *Franke v. Mann,* 106 Wis. 118, at p. 125 (81 N. W. 1014). The original constitution of the defendant corporation provided that it should be served only by ministers in good standing, members of the Evangelical Synod of North America. Up to the time of the factional disturbances now complained of it had been served by one Kupfer, who, however, some time in 1906, seceded from the doctrines of that synod, and has either been expelled from membership therein or at least has wholly severed his connection therewith. It is alleged that the defendants have changed the name of the corporation from the *Evangelical Creed Congregation of Milwaukee* to the Evangelical Lutheran Creed Congregation; that they have put in use in the Sunday school and otherwise the books to which the Lutherans alone adhere, and have excluded those others approved by the Evangelicals; that they have resolved that the society shall have nothing further to do with the Wis-

consin district of the Evangelicals, directly or indirectly, and declared that the congregation shall be and remain "Evangelical Lutheran," and that the property, in case of schism or division, shall be enjoyed only by those who adhere to the constitution as so amended, and they are employing as pastor the said Kupfer, who has departed from the Evangelical faith and is preaching doctrine inconsistent therewith.

Without going further into the details of this complaint, we think it abundantly alleged that the defendants are perverting the property in question from the uses of the Evangelical Church and to uses inconsistent therewith and antagonistic thereto. Its allegations carry the situation far beyond what has been so held in many decided cases, a few of which may be cited: *Franke v. Mann,* 106 Wis. 118, 81 N. W. 1014; *Cape v. Plymouth Cong. Church,* 117 Wis. 150, 93 N. W. 449; *S. C.* 130 Wis. 174, 109 N. W. 928; *Smith v. Pedigo,* 145 Ind. 361, 33 N. E. 777, 44 N. E. 363; *Hale v. Everett,* 53 N. H. 1; *Mt. Helm B. Church v. Jones,* 79 Miss. 488, 30 South. 714; *Mt. Zion B. Church v. Whitmore,* 83 Iowa, 138, 49 N. W. 81; *Park v. Chaplin,* 96 Iowa, 55, 64 N. W. 674; *Christian Church v. Carpenter,* 108 Iowa, 647, 79 N. W. 375.

We are thus brought to the conclusion that a cause of action is stated to invoke the power of a court of equity to restrain the misapplication of the property of this corporation, and we need not decide whether all of the relief demanded, in its many details, is within the proper province of a court or invades that field of ecclesiastical opinion and regulation with which courts ordinarily will not interfere. The complaint states some cause of action, and therefore the demurrer thereto was properly overruled.

*By the Court.*—Order affirmed.