WISCONSIN UNIVERSALIST CONVENTION, Appellant, vs. UN-
   ION UNITARIAN & UNIVERSALIST SOCIETY OF PRAIRIE
   DU SAC, WISCONSIN, Respondent.

*January 9—January 28, 1913.*

*Religious societies: Nonsectarian society: Change: Adoption of creed:*
   *Trusts and trustees: Diversion of property.*

1. In an action brought by a religious society alleged to be at the
   head of the Universalist denomination in this state and to be
   the only general religious corporation in this state for aiding
   and promoting "liberal" Christian churches, against a religious
   society which had sold its church property, to have a trust
   declared in the proceeds of such sale in favor of those religious
   beliefs which are aided by plaintiff, the complaint is *held* in-
   sufficient on demurrer, it appearing therefrom that the defend-
   ant was not organized as a Universalist society but as an inde-
   pendent, nonsectarian, religious society, and that it had never
   become a Universalist society by subsequent action of its mem-
   bers.

2. A change in defendant's articles of association and the adoption
   of the Universalist creed could not be made against the pro-
   test of any member; and the facts that the plaintiff had been
   permitted to use defendant's church building and had dedi-
   cated it to the Universalist faith without objection from any
   of defendant's members, and that the ministers employed by
   defendant were all ordained ministers of the Universalist
   faith, do not show that the defendant had become a Universal-
   ist society, especially since it appears that a large portion of
   defendant's members were opposed to the adoption of any
   creed, and does not appear that the doctrines or tenets of Uni-
   versalism were taught or preached in the church in any re-
   spect wherein they conflicted with the objects and purposes of
   the defendant as declared in its articles of association.

3. If the funds in defendant's hands arising from the sale of its
   church property were impressed with a charitable trust (a
   point not decided), that fact alone is not sufficient to sustain
   the action, the defendant being the rightful trustee and the
   complaint not alleging any actual or threatened diversion of
   the funds or any mismanagement, incompetency, or dishonesty
   which would warrant the removal of such trustee and the ap-
   pointment of another.

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

This is an appeal from an order sustaining a demurrer to the amended complaint. Such complaint alleges that the plaintiff is a religious corporation; that since the date of its organization it has been at the head of the Universalist denomination in Wisconsin; that it has general superintendence of all Universalist churches in the state; that it is actively engaged in carrying on general religious work in this state; that its work is missionary and not ecclesiastical; that it assists in the foundation of new churches, and aids such local societies and organizations as may need help; that it requires no adoption or declaration of a creed or denominational religious practice further than those of "liberal" Christianity in order to receive this fellowship; that it extends its service and assistance to any church or religious society which promulgates tenets or religious principles similar to those of the Unitarian and Universalist societies, and to any other church or religious organization which favors the Christian religion and is of the "liberal" as distinguished from the orthodox faith; that plaintiff is the only general religious corporation or society in the state of Wisconsin which is organized for the purpose of fostering, aiding, and promoting Christian churches which adopt "liberal" as distinguished from the orthodox denomination of the Protestant faith; that the defendant was duly organized as a religious society in 1867, under title 13, ch. 66, R. S. 1858; that soon thereafter it adopted articles of association, a copy of which is made a part of the complaint; that said society raised funds, purchased real estate, and erected a church building, which was completed in 1869 or 1870; that the majority of the persons who contributed the funds necessary for the purchase of the real estate and the building of the church edifice of the defendant were of the Universalist belief, the remainder being of the Unitarian faith or of no particular religious creed; that the

great majority if not all of the contributions to the congrega-
tion were made with a view of establishing a "liberal" if not
a Universalist church; that in May, 1870, one Rev. J. H. M.
Smith, an ordained minister of the Universalist faith, was
appointed pastor of said society; that in April, 1871, some
sixteen or seventeen of the original members of the defendant
seceded from said church and with eight or ten others or-
ganized the First Universalist Church at Prairie du Sac;
that said last named church adopted a constitution and by-
laws providing for the use and acceptance of the Universalist
faith as the governing religious tenets and principles of said
church and that a copy of such constitution and by-laws is
made a part of the complaint; that at the time the defendant
was organized the controlling element was Universalist, with
some Unitarian and a small nonsectarian following; that in a
spirit of general compromise and good will said association
was called the *Union Unitarian and Universalist Society;*
that shortly after the organization of the defendant there was
a general demand among its members for the adoption of
some definite religious principles, and that said First Univer-
salist Church was organized as above set forth to meet that
demand; that one Young became the moderator of said First
Universalist Church while still acting as president of the said
defendant and that some of the trustees of said defendant
held offices in said First Universalist Church; that Rev. M.
G. Todd, a duly ordained minister of the Universalist faith,
succeeded Rev. Smith as pastor of the defendant and was
paid out of its treasury and became pastor and clerk of said
First Universalist Church; that after the completion of said
church it was used and occupied by but one congregation,
which worshiped as a religious unit with one pastor and one
form of service, which was that of the Universalist faith;
that said congregation used the articles and by-laws of said
First Universalist Church as a general guide for its religious
activity; that said congregation consisted of the members,

families, and friends of said societies, and contained, with few exceptions, all the persons who had contributed to the purchase of said real estate and the erection of said building; that said congregation furnished the means necessary for the conducting of the services held in said building; that the temporal affairs of said congregation were conducted by and through the officers and offices of said defendant; that said congregation continued as a unit until its lapse and disorganization; that said defendant never conducted any religious services in said building except as maintained and supported by said congregation; that on or about the 2d day of June, 1872, the executive board and the general annual convention of plaintiff met in said building and that both of said meetings were held there at the invitation of said congregation; that at the meeting of said board and convention and of the local congregation held in conjunction therewith the said building was dedicated and said executive committee made all arrangements for said dedication; that said building was then and there dedicated to the Universalist faith, as plaintiff is informed and verily believes; that said dedication was made without objection from any member or officer of said defendant or of said congregation; that during the existence of said congregation four permanent pastors were employed by said defendant, to wit, Rev. Smith, Rev. Todd, Rev. Rogers, and Rev. Ella Bartlett, all of whom were duly ordained ministers of the Universalist faith in this state, and while engaged as pastors their salaries were paid out of the treasury of the defendant; that said congregation was granted fellowship by the plaintiff in June, 1871, and that the state convention was held in said building in 1872; that said congregation sent delegates to the state conventions in 1874, 1881, 1885, and 1893; that said plaintiff regarded the church at Prairie du Sac as an integral part of the state organization from 1871 to the time of the dissolution of the local church; that said plaintiff helped the said organization in obtaining pastors,

and that on several occasions when the local congregation was weak and dissolution threatened, said plaintiff sent ministers at its own expense to help keep the said local church alive; that on one or two occasions plaintiff gave said defendant direct financial aid, as it is informed and verily believes; that said local congregation prospered for a time, but gradually began to weaken, due to the death or removal of its early members and the failure of new members to sustain it; that for the past fifteen or eighteen years the defendant has ceased and failed to maintain religious worship or services or to use its property for religious worship or services according to the tenets, usages, and customs of Universalist or Unitarian churches in this state, or for any other religious purposes consistent with its articles of organization; that it has become so diminished in number of members and in financial strength as to render it impossible or impracticable for such church to maintain religious worship or services or to protect its property from waste or dilapidation; that for said last mentioned period it has failed to fulfil the purposes for which it was organized and has failed to elect officers or trustees, and that for the past five or six years previous to its sale said property remained unused, paying no income, and was falling into decay; that from 1893 to 1905 said church building was rented from time to time by its last surviving treasurer to other local churches; that part of said rentals were used in the payment of debts and meeting expenses in the repair of the building, and that a balance of $143 is now held by the defendant; that upon the application of the defendant an order was made in November, 1911, by the circuit court for Sauk county authorizing and directing said society to dispose of said building and real estate at public auction, and that pursuant to such order said real estate was sold for $1,900 and the proceeds of the sale turned into defendant's treasury.

The relief prayed for was that a trust be declared in said funds in favor of those religious beliefs which are aided and

assisted by plaintiff in the usual scope of its work and activity, and that plaintiff or some other suitable person be appointed trustee of said funds, and that plaintiff have such other and further relief as might be just and equitable.

The articles of association of the defendant recited that the object of the society should be "to promote the highest and truest physiological, intellectual, moral, and spiritual welfare of its members individually and of all who may come within the sphere of its influences," that an expressed desire to enjoy the benefits and promote the objects of the society should be the only prescribed qualifications for membership; that the society "shall be forever sovereign within its own membership for all that pertains to its existence and welfare as a religious organization;" that "no creed, articles of belief, or prescribed formula of devotion whatever shall be established for authority in this society;" that no ordinances or ceremonial should ever be prescribed "as a required observance in this society, but members may receive from the pastor baptism, the Lord's Supper, or on entering the society some formal recognition if they so desire." These articles were signed by forty persons.

The constitution and by-laws of the First Universalist Church referred to in the complaint are quite lengthy, and it is unnecessary to set forth their contents in detail. They show that said First Universalist Church of Prairie du Sac was a sectarian society, the members of which were required to subscribe to a definite confession of faith.

*William T. Kelsey,* for the appellant.

For the respondent there was a brief by *Sanborn & Blake,* and oral argument by *C. E. Blake.*

Barnes, J.   The plaintiff brings this action to have a trust declared in the funds in the hands of the defendant in favor of those religious beliefs which are aided by plaintiff and to have itself or some other suitable person appointed trustee of

said funds.   A full synopsis of the complaint is given in the statement of facts.   In reading it care should be taken not to confuse the allegations thereof that are applicable to the "First Universalist Church of Prairie du Sac" with those which relate to the defendant.   ·

The questions involved are: (1) Was the defendant at its inception organized as a Universalist society?   (2) If not, did it become such a society by subsequent action of its members?   (3) If it be assumed that a charitable trust was created, does the complaint show that the administration of such trust should be taken from the defendant and vested in some one else?

1. The complaint furnishes an obvious answer to the first question.   The defendant was organized as an independent, nonsectarian, religious society.   Members of any Christian sect, Jews, Mohammedans, Buddhists, Brahmans, or Confucians might join it without surrendering or sacrificing any of their religious beliefs.   The complaint alleges that the membership of defendant was made up of Universalists, Unitarians, and of those who professed no particular religious creed.   It is not contended that the Universalists do not profess and maintain sectarian doctrines which are at variance with those subscribed to by the members of most of the other Christian denominations, or that an Universalist society is not a sectarian body.   The complaint clearly negatives the idea that the defendant originally was an Universalist society.

2. It is alleged that in 1872 the "executive board and general annual convention of the plaintiff" met in the defendant's church and that such church was then dedicated to the Universalist faith, and that such dedication was made without objection from any member or officer of the defendant. It does not appear from the complaint that this dedication was anything more than a religious ceremony.   Admitting that all of the members of said defendant might consent to

change their articles of organization and to adopt the Universalist creed, such change could not be made against the protest of any member. *Marien v. Evangelical C. Cong.* 132 Wis. 650, 113 N. W. 66; *S. C.* 140 Wis. 31, 121 N. W. 604. An allegation that the defendant permitted plaintiff to use its church and that plaintiff proceeded to dedicate it as an Universalist church without any protest from the defendant's members, falls far short of showing that such members deliberately concluded to embrace the Universalist faith in a body and to thereafter devote their church to the practice and advancement of the newly adopted faith. The complaint simply shows that the members of the defendant corporation were indifferent about the dedication ceremonies. A little more than a year before sixteen of the members of the defendant, desiring to adopt some definite religious principles, seceded and formed the First Universalist Church of Prairie du Sac. It was essential to membership in this church that the candidate for membership should make "a public confession of faith in the articles of belief adopted by the General Convention of Universalists at its annual session convened at Winchester, N. H., A. D. 1803." Apparently, the larger portion of defendant's members elected not to join the new church and were opposed to the adoption of any particular creed. It is alleged that the ministers employed by the defendant were all ordained ministers of the Universalist faith, but it is not alleged that the doctrine or tenets of Universalism were taught or preached where they came in conflict with the objects and purposes of the defendant as declared in its articles of incorporation. While a certain community of interest and a friendly feeling existed between the defendant and both Universalists and Unitarians, it did not amalgamate with either of these denominations.

3. It is quite clear that the object of the plaintiff in bringing this action was to secure the funds in the hands of the defendant, for the purpose of promoting the objects and pur-

poses of plaintiff. It is equally clear that the latter is not entitled to such relief. It was suggested on the argument that the funds in defendant's hands were impressed with a charitable trust, that the purposes of the trust were being defeated, and that it was the duty of a court of equity to appoint a new trustee at the instance of a private party to execute the trust, and that the complaint contained sufficient by way of averment to state a cause of action of this nature.

It is often a difficult as well as a delicate question to determine whether a certain transaction creates a charitable trust. Our legal literature has been enriched or at least augmented by many more or less illuminating discussions of the subject. The present case affords a tempting opportunity to clarify or complicate the law on the question. The exercise of what we conceive to be sound discretion prompts us "to let well enough alone." It is not necessary to decide whether or not a charitable trust was created and we do not decide the question. If such a trust was created in the present instance, then the corporation which is named as defendant was and is the rightful trustee. It is only in case of a real or threatened diversion of the trust funds or property, or of mismanagement, incompetence, or dishonesty, that a court may interfere to remove the regularly appointed trustee and name another in his stead. There is no allegation in the complaint that the defendant or its officers have squandered any of the money referred to or that they threaten or intend to do so or that they threaten or intend to divert it to any unlawful purpose or to any purpose for which they have not the right to use it. The complaint does show that for a time the church property was not properly cared for and that it became dilapidated. Defendant remedied this situation by selling the property after having first obtained leave of court. No complaint is directed toward the handling or management of the money now in defendant's hands.

*By the Court.*—Order affirmed.