KERLER and others, Respondents, vs. EVANGELICAL EMANUEL'S CHURCH OF HALES CORNERS and others, Appellants.

*October 12—November 9, 1938.*

244

For the appellants there was a brief by *Jacobson & Malone,* and oral argument by *Richard S. Hippenmeyer* and *Don B. Malone,* all of Waukesha.

For the respondents there was a brief by *Bitker & Puchner* of Milwaukee, and oral argument by *Irving A. Puchner.*

FOWLER, J. The plaintiffs are members and a part of a faction of the membership of the defendant corporation. The individual defendants are the pastor, trustees, and officers of the corporation. The word "church" will be hereinafter used as meaning the corporation.

It appears from the complaint that the pastor of the church was for some reason not stated dismissed in December, 1937, from membership in the Evangelical Synod of North America; that he "is not now affiliated with any denominational group," and that "the religious services now conducted by him" in the church "are not in accordance with the ritual and faith of the Evangelical Faith;" and that the church is affiliated with the above-named synod. The plaintiffs claim that as members of the church they and forty-two other named members acting with them are entitled to have as pastor one who is a member of said synod and to have services conducted in accordance with its ritual; that the retention of the said pastor after his dismissal is unlawful; and they pray judgment enjoining the defendant officers of the church from using the church edifice or parsonage or disposing of any of its property; removing the defendants as trustees and officers; vacating amendments to the constitution adopted in 1937; and restoring the church to them for use by the members in accordance with the constitution and by-laws of the church as they existed prior to the 1937 amendments.

The complaint incorporates as part thereof three exhibits: The articles of incorporation of the church adopted in 1888; the constitution of the church as adopted upon the formation of the corporation; and the constitution of the church as amended in 1932 which the plaintiffs accept as the present constitution. Changes attempted to be made in 1937 are set out. No claim is made that the amendments of 1937 were not duly adopted. The claim is that those amendments are void as beyond the power of the members to adopt, and that being void, actions of the defendant officers pursuant thereto constitute misconduct for which they should be removed and required to restore the church and its property to the plaintiffs that its affairs may be conducted according to the

requirements of the constitution of the church as it existed prior to 1937 and its services and teachings conducted and taught according to the ritual and creed of the synod.

It appears from the complaint that in 1888 the defendant church was organized, and that its articles of incorporation declared that the incorporators "and those who are or may become associated with them for the purposes herein specified have organized themselves into a religious society for the Independent Worship of God, the Promotion of the interests of Religion in our midst and the Spread of Spiritual Holiness throughout the world and said society to be located at Hales Corners, . . . for religious, charitable and educational purposes," under the name of the Evangelische Emanuel Church of Hales Corners. The German word "Evangelische" was changed to the English word "Evangelical" by the amendments of 1932.

It further appears that the constitution adopted by the church contemporaneously with the adoption of its articles of incorporation contained the "Confession of Faith" of the church and declared that "as an Evangelical Congregation we [the members of the church] acknowledge the Holy Scriptures . . . as the Word of God . . . accept the interpretation of the Holy Scriptures as given in the symbolic books of the Lutheran and the Reformed Church, the most important being: The Augsburg Confession, Luther's and the Heidelberg Catechisms, in so far as they agree but where they disagree the congregation adheres strictly to the passages of the Holy Scriptures bearing on the subject and avails itself of the liberty of conscience prevailing in the Evangelical Church." This provision is stated to be identical with the Confession of Faith of the Evangelical Synod of North America.

The complaint further alleges that "the corporation constructed a church [house of worship] and a parsonage and

equipped the same out of funds furnished by members of the corporation and dedicated the property to the worship of God according to the Evangelical Faith." That the property is now being used wrongfully by the defendants for purposes other than the worship of God according to such faith. That "the plaintiffs desire to worship God according to the tenets of the Evangelical Faith. For that purpose they became and were admitted as members of the Evangelical Emanuel's Church of Hales Corners. By the action of the defendants in changing the constitution as aforesaid, retaining Charles W. Hornburg as pastor, and using the church property to conduct religious services in nonconformity to the Evangelical faith, they are deprived of the right to use the church property for the purpose for which it was dedicated and the purposes of the corporation are wrongfully changed."

The plaintiffs contend that the church was organized as a member of the Evangelical Synod of North America, and the defendants contend that it was organized as an independent church. The defendants base their whole case upon the articles of incorporation and the declaration therein of purpose to form a religious society for the *independent* worship of God. The plaintiffs base their claims upon the proposition that the constitution adopted upon the adoption of the articles shows that the real purpose of the organization was to create a member of the synod named in the constitution, with the Confession of Faith of that synod, and to have services and teaching conducted as prescribed by that synod.

We are of opinion that the fact that the constitution of the church as adopted contemporaneously with the adoption of its articles of incorporation supports the inference that the church "was organized as a religious corporation of the Evangelical Faith" as particularly alleged in the complaint and that this is not inconsistent with the declaration of the

articles of incorporation that the purpose of organization was "the independent worship of God." The plaintiffs allege in their complaint that the phrase "independent worship of God" as used in the articles of incorporation means "independent from political or state coercion and control," and we do not perceive that it may not so mean, or why the allegation should not be taken as an allegation of fact.

The rights of the plaintiffs under the facts appearing from the complaint were so well and so tersely expressed by Mr. Justice DODGE in the opinion in *Marien v. Evangelical Creed Congregation*, 132 Wis. 650, 652, 113 N. W. 66, that we can do no better than repeat as the law of this case what is there stated:

"The only concern of courts with the differences of creed or belief within or between religious organizations is when some property or contract rights are involved and demand protection. It is, however, fully established by our own court, in common with most others, that when property has been acquired, whether by gift or purchase, for the maintenance and support of the faith of any recognized denomination or church, every member of the association acquiring it, corporate or unincorporated, has a right to resist its diversion to other antagonistic uses, whether secular or religious, and therefore those who hold the title or control, whether a corporation or the officers of the association, hold it charged with a trust to apply it to the uses for which acquired and not to inconsistent ones. Such trusts the courts will protect and enforce. *Fadness v. Braunborg,* 73 Wis. 257, 293, 41 N. W. 84; *Franke v. Mann,* 106 Wis. 118, 81 N. W. 1014; *Cape v. Plymouth Cong. Church,* 117 Wis. 150, 93 N. W. 449; *S. C.,* 130 Wis. 174, 109 N. W. 928."

The situations in the *Marien* and the instant case are the same in all essential particulars. In that case "the defendant corporation was organized to support the faith of, and to be connected with, the German Evangelical Synod of North America," as the complaint herein alleges the instant church

was organized. That church had been served by a pastor who had "seceded from the doctrines of that Synod" and had "either been expelled from membership therein or at least has wholly severed his connection therewith." That is the instant situation, except that the pastor there had accepted and was preaching the doctrines of the Evangelical Lutheran Church while the instant pastor is alleged not to be united with any church or denomination, is not alleged to be preaching the doctrines of any particular church or denomination, and is alleged not to be preaching the doctrines of the Evangelical Faith. There the name of the church was changed from Evangelical Creed Congregation to Evangelical Lutheran Creed Congregation; here the name of the church was not changed, but the following radical changes in the constitution were made which are more indicative of departure from the Evangelical faith than mere change of name. The Confession of the old constitution began, "As an Evangelical Congregation;" the new begins, "As a Christian Congregation;" the old accepted "the interpretation of the Holy Scriptures as given in the symbolic books of the Lutheran and the Reformed Church;" the new strikes out the phrase "and the Reformed;" the old states the most important "symbolic books" referred to in the "Confession" as "The Augsburg Confession, Luther's and the Heidelberg Catechisms;" the new states them as the Augsburg Confession and Luther's Catechism, and strikes out from the old the clauses following the word catechism "in so far as they agree but where they disagree the congregation adheres strictly to the passages of the Holy Scriptures bearing on the subject and avails itself of the liberty of conscience prevailing in the Evangelical Church." In the *Marien Case* the defendants had put in use in the Sunday school and otherwise the books to which the Lutherans alone adhere and those others approved by the Evangelicals were excluded,

and had declared that the congregation should be and remain Evangelical Lutheran; here it is alleged that the ritual prescribed by the synod is not used.

Enough has been stated to show the similarity between the situations involved in the *Marien* and the instant case, if not their identity. Other radical changes were made in what we have above referred to as the "old" by the "new" constitutions, meaning by the latter the constitution adopted in 1937 and by the former the constitution then existing, that clearly show a withdrawal of the church from the synod, practices differing from those prescribed by the synod and preaching and teaching by the pastor of doctrines at variance from those of the synod. The most significant of these are as follows: The old provided that differences between congregation and pastor should be "submitted to the judiciary of the Evangelical Synod of North America." This provision is eliminated from the new constitution. The old provided that the congregation should make "ample provision for the religious education of its children *in close conformity with the system of religious education in the Evangelical Synod. Additional* provision for continued training and instruction of youths and adults shall be made." The new strikes the words above italicized. By the old, the church could only elect as pastor one "who is a member of the Evangelical Synod of North America or is recommended by the District President and the President General." The new retains the present pastor who it is declared was elected by the congregation and provides that in the future the pastor "shall be elected by the congregation upon recommendation of the church council." The old provides that the pastor should "perform all such duties as belong to the pastor's office of the *Evangelical Church*." The new strikes out the italicized words. In respect to the calling of a pastor the old constitution provides that "the church council should get in

touch *with the President of the Wisconsin District of the Evangelical Synod of North America pertaining to the calling of a suitable pastor,* who *may* be entrusted with the ministry of the congregation. The congregation, however, reserves the right to acquaint itself with suitable pastors and invite *such through the President of the District."* The words above italicized preceding the words in the first paragraph "who may be entrusted" are stricken, and the words "a suitable pastor" are substituted therefor, and the word "may" is stricken and the words "is worthy to" are substituted therefor. The italicized words in the second paragraph are stricken, and the words "the one of their choice" substituted. Other modifications of the old constitution are stated in the complaint, but the ones stated show an attempt to withdraw the church from the synod and substitute a pastor, if not of the Evangelical Lutheran Church, as in the *Marien Case, supra,* one of no church or of some other church or denomination. Whether the substituted pastor is of the Evangelical Lutheran denomination or none at all is immaterial. All this under the *Marien Case* entitles the plaintiffs to some measure of relief. What the measure is does not arise on demurrer. If the plaintiffs are entitled to any relief, a general demurrer on the ground of insufficiency is bad.

*By the Court.*—The order of the circuit court is affirmed.