Franke and others vs. Mann and others.

FRANKE and others, Respondents, vs. MANN and others, Appellants.

*February 8 — February 27, 1900.*

(1) *Appeal: Assignment of errors: Insufficiency of evidence.* (2–6) *Religious societies: Notice of organization: De facto corporation: Evidence: Findings: Diversion of trust property: Injunction.*

1. As a general rule a judgment will be affirmed on appeal unless prejudicial error is made to appear affirmatively. Errors should be definitely assigned and a good-faith attempt made to present them to the court; and where the claim is that a finding of fact is contrary to the evidence, the evidence or want of evidence bearing on the question should be brought to the attention of the court.

2. Where incorporators are not members of a religious organization, but desire to organize a corporation in connection with a church of their own peculiar tenets to be associated therewith, no notice of the intent to so organize, or of the time or place of forming the organization, is necessary under sec. 1990, Stats. 1898.

3. In a *bona fide* attempt to comply with the statute authorizing the formation of religious corporations, articles were drawn and signed in proper form except as to the acknowledgment, and were recorded, and the corporation was organized by the election of trustees, and the right to exercise the franchise of being a corporation asserted, and such franchise used in good faith for a number of years without objection. *Held,* that although no notice of the purpose to organize a corporation was given pursuant to sec. 1990, R. S. 1878, there was a corporation *de facto* at least, the legality of whose organization cannot be questioned in a controversy between its members as to the uses to which its property shall be put.

4. In an action by members of a religious corporation to restrain diversion of its property from its legitimate use, findings of the trial court to the effect that the corporation had been organized as a society of a certain church or sect, and that the property had been deeded to its trustees for its use in harmony with the purposes of its organization, are *held* to be sustained by the evidence.

5. Where a religious society is organized as a corporation of a certain church or sect, under the jurisdiction and government of a synod, land conveyed to its trustees for church purposes is held in trust for that particular use, and its diversion by such trustees, even by the will of a majority of the members of the society, to other and inconsistent uses (such as the uses of a different sect) will be restrained at the suit of the minority.

APPEAL from a judgment of the circuit court for La Fayette county: GEO. CLEMENTSON, Circuit Judge. *Affirmed.*

Equitable action to prevent members of a religious corporation from perverting the use of its property.

The issues made by the complaint were decided by the trial court substantially as follows:

(1) On May 13, 1888, for some years theretofore, and ever since, the German Evangelical Synod of North America has existed in Wisconsin and other states as a religious corporation separate and distinct from all others, and has been and is made up of people whose beliefs on religious and church questions differ materially from those of any other church or sect, particularly from the belief of the members of the Lutheran or German Lutheran Church.

(2) At the time stated Wisconsin was a district of such synod, having a form of government binding the different church societies composing it to the distinct belief of the sect known as the "German Evangelical Church."

(3) On May 13th, aforesaid, at the town of Wayne, La Fayette county, Wisconsin, several persons named in the complaint, competent for the purpose, members of the German Evangelical Church and its Synod of North America, for the purpose of forming a religious society of such sect and synod, made a certificate of organization for a church corporation, in good faith, intending to comply with the laws of this state on that subject, but failed to have the execution of such certificate acknowledged, though they caused the same to be recorded in the office of the register of deeds of La Fayette county May 29, 1888, and thereafter, on May 4, 1897, seven of the fifteen signers of the certificate duly acknowledged the same and caused the certificate thereof to be recorded in the margin of the record of the articles.

(4) The day the articles of organization were signed the signers held their first meeting and duly elected trustees, and thereafter a corporate organization was maintained, the

right to be a corporation asserted, and the corporate franchise accordingly used down to the time of the commencement of this action, the defendants, except the defendant *Schlicting*, being then the trustees.

(5) The corporation, till 1896, submitted to the government and direction of the German Evangelical Synod of North America, and recognized its authority as a superior governing power in all respects according to the ecclesiastical law of the synod. The Wayne church society, together with two other such organizations, was presided over during the time mentioned by ministers of the German Evangelical Church, designated for that purpose by the synod of the sect for North America, and took part, in the manner provided by the rules of the sect, in the district conferences and conventions of the church for the district of Wisconsin.

(6) Substantially all members of the society, including plaintiffs and defendants, signed their names in a book kept for that purpose, as did the members of the other churches of the sect presided over by the same minister, as aforesaid, purporting thereby to adopt the synodical rules and regulations prescribed for such purposes. Such rules were not formally adopted by a vote of the members of the society or by any formal corporate act. The individual members of the society signed the book at the request of the minister as and for a submission of the society to the rules, and such rules were submitted to by the society and the members thereof up to about the year 1896.

(7) The subordinate organizations of the German Evangelical Synod of North America are bound by its constitution and system of government to submit thereto in all matters, including the religious belief of the church and its forms and ceremonies, and not to employ a pastor other than a member of the German Evangelical Church, ordained by the synod of such church for North America, holding its

certificate of good character and behavior, and who shall subscribe a written promise to be faithful to the rules and regulations of such society and synod.

(8) The society built a church edifice on lands described in the complaint, donated to the society for that purpose by *Wilhelm Taufmann*, one of the plaintiffs. The conveyance was made in form to the trustees of the German Evangelical St. Paul's Society of the Town of Wayne, La Fayette County, Wisconsin, for the use of such society. It was accepted by the corporation, with knowledge of its provisions by sub-stantially all the members of the society, and without objection as to the use declared. There was some talk by individual members of the church about the property being made free to all sects except Roman Catholics, but that was never favored by the society as such.

(9) The church building was paid for by money contributed by its members, was duly dedicated as property of a society of the German Evangelical Synod of North America, and was used in harmony therewith till some time in 1896, when, on account of difficulty about obtaining a minister to serve the society, defendant *Schlicting*, a minister of the Lutheran Church and sect, materially different in its religious belief and distinct from that of the Wayne society, was employed to serve it for one year, at the end of which period a majority of the members of the society again employed *Schlicting*, the minority protesting on the ground that they desired and were entitled to have a minister in harmony with the society as a member of the German Evangelical Church Synod of North America. Pursuant to such employment, notwithstanding such protest, *Schlicting* served the society till interfered with by the temporary injunction granted in this action, and in so doing confined his ministrations in harmony with the sect to which he belonged, the German Lutheran Church, preaching the belief of such sect, which, as before indicated, was materially out of harmony

with the religious belief of the German Evangelical Church of the Synod of North America, and assumed the right to, and did, prevent the use of the church edifice by a minister of the society to which the church belonged.

On such facts the court concluded:

(1) The German Evangelical St. Paul's Society of the Town of Wayne, La Fayette County, Wisconsin, since May, 1888, has been a church corporation under the laws of this state, subject to the system of church government of the German Evangelical Synod of North America.

(2) The title to the church edifice and property described in the complaint is held in trust by the trustees of the Wayne society, for the use of such society as an organization of the German Evangelical Synod of North America, and for the exclusive use of such society in harmony with the religious views of the German Evangelical Church and such synod of such sect.

(3) Defendants having perverted the property of such society from its legitimate use, plaintiffs, though constituting a minority of the members of the society, have a right to such redress as will prevent the further perversion of its property, and as will compel the use of such property in conformity with the religious belief of the German Evangelical Church and the system of government of the synod of such church for the district in which the society is located.

(4) Plaintiffs are entitled to judgment accordingly and as prayed for in the complaint.

Judgment was rendered in accordance with the aforesaid conclusions, from which this appeal was taken.

For the appellants there was a brief by *Wilson & Martin*, and oral argument by *H. C. Martin*.

For the respondents there was a brief by *Orton & Osborn* and *Thomas Luchsinger*, and oral argument by *P. A. Orton*. To the point that property acquired for the religious

uses of any church, sect, or denomination of Christians must
be sacredly preserved for such particular uses and purposes,
and that it may not be perverted to other uses, even by a
majority of the members of the organization, they cited, be-
sides cases cited in the opinion, *Krecker v. Shirey*, 163 Pa.
St. 534; *White v. Rice*, 112 Mich. 403; *Kniskern v. Lutheran
Churches*, 1 Sandf. Ch. 439; *Roshi's Appeal*, 69 Pa. St. 462,
8 Am. Rep. 275; *Fuchs v. Meisel*, 102 Mich. 375; *Lynd v.
Menzies*, 33 N. J. Law, 164; *Auracher v. Yerger*, 90 Iowa,
558; *Schweiker v. Husser*, 146 Ill. 399; *Russie v. Brazzell*,
128 Mo. 93; *Schlichter v. Keiter*, 156 Pa. St. 119.

MARSHALL, J. Thirty-six exceptions were filed to the find-
ings of fact, but counsel for appellants made no specific as-
signment of error in regard to such findings in accordance
with the rules and settled practice of the court. We find
in counsels' brief a statement of their claim in a general
way, and a statement that the court erred in so far as the
findings and conclusions of law are inconsistent with such
view, and on that we are referred to the pages of the printed
case where the findings and conclusions of law may be
found, and in like manner to the exceptions thereto, partic-
ularly to twelve of such exceptions by their numbers. No
attempt was made by counsel in their brief to point out evi-
dence that is contrary to the findings or want of evidence
to support them, but it is suggested that we carefully study
the printed case of 143 pages, with a view of discovering
whether any of the exceptions were well taken or not. With
such a presentation of the appeal, judicial duty requires only
a sufficient examination of the case to determine whether
the findings and pleadings support the judgment. Error is
presumed against on appeal, and unless, as to the facts at
least, that is met by some distinct assignment of error or er-
rors, and some attempt to discuss such assignments and to
point out evidence or want of evidence to warrant them or

some of them, it will prevail. The general rule is that a judgment on appeal will be affirmed, unless prejudicial error not only exist, but be made to affirmatively appear. *Eaton v. Patchin*, 20 Wis. 485; *Milwaukee H. Co. v. Teasdale*, 91 Wis. 59; *Menz v. Beebe*, 102 Wis. 342; *Alexander v. Irwin*, 20 Neb. 204; *Pottawattamie Co. v. Marshall Co.* 56 Iowa, 410; *Mc Vey v. Johnson*, 75 Iowa, 165; *Papke v. Papke*, 30 Minn. 260. That rule means more than that error may be discovered in the record. It requires that the person alleging error must point it out and make it affirmatively appear in accordance with the rules and practice of the court. That requires error to be definitely assigned and a good-faith attempt made to present it to the court for consideration; and where the claim is that a finding of fact is contrary to the evidence, that the evidence, or want of evidence, bearing on the question, be brought to the attention of the court.

From the foregoing it is plain that this court would be justified in disregarding all contentions of the appellants' counsel that the findings of fact are contrary to the evidence. However, the labor put upon the case indicates so clearly that the appeal was taken in good faith, and that the omission to comply with the rules and practice governing the matter was not intentional, that the neglect may be easily excused in the interest of justice, particularly to the parties whose rights are involved. That has been done, and the record examined carefully, and with more labor than would have been necessary had the evidence or want of evidence relied upon been definitely pointed out.

We are unable to discover any substantial conflict in the evidence on many of the material points, and no clear preponderance of evidence against any of the facts found. The evidence appears to be all one way that the church corporation was formed for the purposes of a religious sect known as the "German Evangelical Church," under the jurisdiction and subject to the government of the established body

Franke and others vs. Mann and others.

of that church in this country, and in the Wisconsin district thereof, known as the German Evangelical Synod of North America; that such sect has distinguishing characteristics of a material character, wherein it differs from all other churches, particularly from the German Lutheran Church, both as regards religious belief and church organization and government; that the land upon which the church edifice was constructed was deeded to the corporation in trust for its use in harmony with the purposes of the organization and none other; that the edifice was erected and paid for with the same view, and that it was dedicated to religious uses according to the religious belief, customs, and government of the German Evangelical Church, particularly of the synod of such church of North America; that the church society was conducted and its property used in strict harmony with the purposes of its organization till a short time before the commencement of this action; that the defendants perverted the property of the society to purposes foreign to the legitimate use thereof, and that there was no peaceable way of redressing the wrong to the corporation and the minority of its members, except by invoking the power of the court.

It is said that when the deed of the land on which the church edifice stands was delivered to the society, the grantor promised that it should be free, except to Roman Catholics, and that subscriptions were made to aid in the construction of the edifice with the same view. Further, that the persons who organized the church society were not members of the German Evangelical Church, but were members of the German Lutheran Church. We fail to find evidence in the record to sustain such claims. True, as the court found, there was some talk by members of the church society respecting the church edifice being free to all sects except Roman Catholics, but the deed was in fact made and delivered to the society for the purposes of its organization, indi-

cated in its articles of organization, and the society accepted it for that use. That fixed the status of the property irrevocably, as regards the power of the corporation over it, acting by defendants, whether by the will of a part or all of its members. *Fadness v. Braunborg,* 73 Wis. 257; *McBride v. Porter,* 17 Iowa, 203; *Sutter v. Trustees,* 42 Pa. St. 503; *Lawson v. Kolbenson,* 61 Ill. 405. The rule in that regard, as it prevails generally, was stated in *McBride v. Porter, supra,* in the following language: "The grantees take the title thereof subject to this limitation, and it is not in the rightful power of the minority, or of the majority, or even of the whole congregation, to divert the property from the use and trust for and with which it was conveyed. The parties receiving the title take the same for control, and it is peculiarly within the province of a court of equity to enforce the trust, and, in its enforcement, the court will look to the trust specified and intended, and must disregard all questions as to majority or as to religious creed and belief except so far as shall be necessary to ascertain the trust intended and the application of the property accordingly."

It is further suggested that no notice was given of the purpose to organize a church corporation May 13, 1888, when the articles of organization were signed, as required by sec. 1990, R. S. 1878; hence that such articles are void, and the findings of fact inconsistent with that view contrary to the evidence. To that there are at least two conclusive answers. Where incorporators are not members of a religious organization, but desire to organize a corporation in connection with a church of their own peculiar tenets to be associated therewith, no notice of an intent to so organize, or the time or place of forming the organization, is necessary. Such were the circumstances under which the society in question was organized, according to findings supported by evidence. But waiving that, there was a statute permitting the formation of such a corporation, an attempt in

good faith to comply therewith, and articles were drawn and signed in form as the statute required, except as to the acknowledgment. They were recorded, the corporation was organized, and the right to exercise the franchise of being a corporation asserted, and such franchise in good faith used, all the persons who are parties to this action concurring, except defendant *Schlicting*, for several years. Such circumstances created a corporation *de facto* at least, which is sufficient for the purposes of this case. *Bergeron v. Hobbs*, 96 Wis. 644; *Slocum v. Head*, 105 Wis. 431.

It is further contended, as a reason why the finding of fact, to the effect that a corporation of the German Evangelical Church of the Synod of North America was organized by and pursuant to the articles signed May 13, 1888, is contrary to the evidence, that such was not the intention of those who participated in what occurred at the time. There seems to be but very little room, if any, for controversy on that point. The person who drew the articles of organization, and under whose direction they were signed, was a minister of the denomination of Christians known as the German Evangelical Church, and a minister of the synod of such church for North America. He framed such articles for the purpose of forming a corporation of his church, and in harmony with the wishes of those who signed them. There is ample evidence as to that. The articles were signed at a meeting at which substantially all who had been accustomed to meet in Wayne to listen to religious teaching of the German Evangelical Church were present. The minister read the articles and explained them, and did likewise with the rules of the church. There is no sufficient evidence to rebut the presumption that all the signers of the articles knew what they contained. In them is the following language: "The undersigned, . . . and those who are or may become associated with them for the purposes herein specified, have organized themselves into a religious

society of the German Evangelical Synod of North America, located in the town of Wayne, county of La Fayette, state of Wisconsin." There is no mistaking the meaning of such language.

The contention that the deed of the land on which the church stands was made for the use of a free church, barring only Roman Catholics, and that the finding is contrary to the evidence on that point, is quite as infirm in its supports as the claim in regard to the intent of the incorporators to form a society of the German Evangelical Synod of North America. As before indicated, the language of the deed vests the title to the property in the grantees for church purposes, meaning, obviously, such church purposes as the society was organized for. That read into the instrument, in effect, the words "as a religious society of the German Evangelical Synod of North America." If we look to the circumstances under which the deed was executed, the fair preponderance of the evidence is that the grantor and the grantees intended that the property should be devoted exclusively to the purposes for which the church corporation was organized; that is, the purposes of a society of the German Evangelical Synod of North America. Before the deed was drawn the grantor, with several members of the church, took advice as to how it should be worded, particularly as to the grantees, having present at the time the articles of organization of the society. The grantor testified that he made no promise before the deed was delivered, except to give the land to the society. When the deed was delivered it was read carefully, a large number of the members of the society being present, and there was evidence that it was afterwards read publicly in church and was fully approved.

We will not further discuss the evidence, but close this branch of the case by saying that a careful reading of the record leads to a satisfactory conclusion that all of the findings, to the effect that the property in question is held by

the church society for its use as an organization of Christians of the belief of the German Evangelical Synod of North America, and as a church society of such synod, are in the main supported by the uncontradicted evidence or the preponderance of the evidence, and that no material question, at least, was determined contrary to the clear preponderance of the evidence.

We come now to the broad question of whether a majority of the members of a church corporation, organized as a body of Christian believers of a particular sect, can devote its property to a use inconsistent with the purposes of the corporation. That question, it would seem, on the most familiar principles, requires a negative answer. It is the law of such corporations, the same as of all others, that they cannot lawfully divert their property to uses in disregard of the limitations contained in the acts creating them. There is no difference between church and other corporations in that regard. Church corporations are creatures of the law the same as business or municipal corporations, and when it comes to property rights a court of equity has the same power to protect the minority in the one as in the other. If every taxpayer in a city but one were to favor the use of public property for a purely private use, the one, backed by the power of the court, would prevail. If all of the stockholders of a business corporation but one were to favor the use of the corporate property for something entirely foreign to the purposes of the corporation, the one stockholder, with right on his side, and the power of the court to enforce it, would control and prevent the mischief. The power of a religious corporation as to the use of its property is limited by its organic act the same as any other. When it exceeds such limitations its acts are *ultra vires*, and the court, at the suit of a member of it, will apply the proper preventive or restorative remedy where there are no superior equities in the way.

The law as above indicated was definitely declared by
this court in *Fadness v. Braunborg,* 73 Wis. 257. Attention
was there called to the wording of the various provisions of
ch. 91, R. S. 1878, under which church corporations are
created. Sec. 1990 authorizes the creation of such corpora-
tions, each limited, however, in its purposes, to those of a
part cular sect and a particular society of such sect, or to
persons of a particular religious belief and a single society
thereof. Other sections place such corporations, in all es-
sential particulars, under the same restrictions as to their
business affairs as those of other corporations existing under
the statutes. It was said in the *Fadness Case,* in effect, that
if officers temporarily in charge of the corporate affairs di-
vert its property from the legitimate uses of the corporation,
as limited by the grant of such property to it, or the pur-
poses of its organization as regards the particular religious
faith it was organized to promote, a court of equity has
ample power to interfere to protect the minority; for as to
such matters the right of each member of the church so-
ciety is the equal of every other, and the rights of all are
referable to the terms of the trust upon which the corpora-
tion property is held, which trust, as indicated, may be de-
clared in the conveyance of the property to the corporation
so far as not inconsistent with its corporate powers, or by
the articles of organization limiting and defining its rights
and those of its members. By submitting to the law of the
state in forming a corporation under the statutes, and vest-
ing the title to the property of a church society in it, the
members thereof become irrevocably bound by the limita-
tions upon corporate power incident to such artificial bodies.

*Evenson v. Ellingson,* 67 Wis. 634, is to the same effect.
It was there suggested that the policy of the state was to
limit the purposes of a church corporation under the statute
to those of a single society, particular sect, or body of per-
sons of like religious belief, to avoid just such dangers as

threatened the minority of the society under considera-
tion,— the danger of schismatic differences causing conten-
tions among factions for the control and use of the property
of the society. The law wisely precludes the hope of fac-
tional, exclusive enjoyment of property, furnishing stimulus
to church differences. Experience has taught that the co-
hesive power of mutual material interests, even those that
are aids to spiritual enjoyment and welfare, present and
future, is generally as powerful to promote, in church af-
fairs, the dwelling together of brothers in harmony, as mat-
ters of doctrine. The benefit of that influence is secured
where persons are incorporated as members of a particular
sect and church, and vest the title to their church property
in such corporation. So fenced about, a faction of a church
community, however large, can neither withdraw and claim
a part or any of the church property, nor remain and divert
its use to purposes foreign to the purposes of the corpora-
tion.

Cases exist, involving corporate control over property not
impressed with a trust for a particular use by the instrument
of conveyance or by the act of incorporation, some of which
have been brought to our attention, and many more might
have been cited; but they do not apply. Sec. 3, ch. 60,
p. 212, 2 Rev. Laws N. Y. 1813, that forms the basis for some
of such decisions, which are referred to in other adjudi-
cations as authority, was said in *Petty v. Tooker*, 21 N. Y.
267, to expressly confer upon trustees of a church corpora-
tion organized under it absolute power of control as regards
the religious use to which the property may be devoted.
Here the statutes give to trustees of a religious corporation
formed under them the same control over its property as is
given to other corporations. The power is limited to the
particular purposes expressly or impliedly named in the act
of incorporation.

What has been said is in harmony with the law regarding

trusts for religious uses, whether the trustees be officers of a religious corporation or of an unincorporated ecclesiastical body, as indicated by the numerous authorities cited in the brief of counsel for respondents, among which are the following: *Ferraria v. Vasconcellos*, 31 Ill. 25; *Mt. Zion Baptist Church v. Whitmore*, 83 Iowa, 138; *White Lick Q. M. F. by Hadley v. White Lick Q. M. F. by Mendenhall*, 89 Ind. 136; *Lamb v. Cain*, 129 Ind. 486; *Miller v. Gable*, 2 Denio, 492; *Schnorr's Appeal*, 67 Pa. St. 138; *Stebbins v. Jennings*, 10 Pick. 172; *Baker v. Fales*, 16 Mass. 503; *Smith v. Pedigo*, 145 Ind. 361; *Hale v. Everett*, 53 N. H. 9.

The governing idea in all such cases is that property held by the trustees of a church society has impressed upon it a character in harmony with the creation of the trust, and that any change of such character is a violation of such trust. If property be conveyed to trustees for use of the corporation, and its organic act proclaims the religious belief of its members and sect to which it belongs, so as to indicate clearly the particular use intended by the grantor, or the conveyance expressly indicates the particular use intended by the grantor, or the conveyance expressly indicates the limitations upon such use, or if a corporate organization be formed as a society of a particular church and it becomes possessed of property in any way in trust to that end, in either case the property is held in trust for the use so indicated, and such use cannot be perverted without consent of all the parties to the trust.

Our attention is called to *Watson v. Jones*, 13 Wall. 679, as supporting the view of appellants, but it is in strict harmony with the foregoing. Justice MILLER there classified controversies that had been before the courts, concerning rights of property held by ecclesiastical bodies, as follows:

(1) Cases where property forming the subject of controversy was, by the terms of the deed or will of the donor, or other instrument by which the property is held, devoted to

the teaching, support, or spread of some specific form of religious doctrine or belief.

(2) Where property is held by a religious congregation which, by the nature of its organization, is strictly independent of other ecclesiastical associations, and, so far as church government is concerned, owes no fealty or obligation to any higher authority.

(3) Cases where the religious corporation or ecclesiastical body holding the property is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control, more or less complete, in some supreme judicatory, over the whole membership of that general organization.

In the first class of cases it was said the property cannot legally be diverted from the purposes of the trust, whether the donee be an independent church or the member of a larger church organization to which it owes obedience. In the second class it was said, where the character of the organization is such that its members, in such manner as may be prescribed by the plan of organization, may freely deal with its property, and such property is not impressed with any trust other than that of the general use for the purposes of the organization as a religious society, its trustees, for the time being, in power, according to the rules of the society, can control the use of the property within the general purposes of its ownership. In the third class of cases it was said, where the control of property is dependent upon the question of doctrine, discipline, ecclesiastical law, rule or custom, or church government, and that has been decided by the highest church tribunal within the organization, the civil court will accept and follow the ecclesiastical determination.

It will be seen that the idea which prevails at every point is that a trust impressed upon property, if there be one, can-

not be legally violated.   As was said, in effect, in *Miller v. Gable*, 2 Denio, 492, a single member of a church will prevail against a dozen to prevent a violation of a trust for a particular religious use of the church.   And in *Mt. Zion Baptist Church v. Whitmore*, 83 Iowa, 188, a minority of the members of the church, however small, may prevent the diversion of the property held by it in trust to promulgate a particular religious faith.

The instant controversy cannot properly be located in the second class mentioned in *Watson v. Jones*, 13 Wall. 679. The Wayne society is not strictly an independent church society.   It was made, by its articles of organization, a society of the German Evangelical Synod of North America. Again, the property was conveyed to the church, as has been stated, for a particular use, within the first class of cases mentioned.   This is not a case where there is no specific trust impressed on the corporate property in the hands of the church; neither is it a cause dependent upon a determination of some ecclesiastical question.

Again, we are not dealing with a controversy regarding which of two factions, claiming to belong to the same sect, is entitled to control its property, the decision involving some question of doctrine, or other ecclesiastical question, as in *Wehmer v. Fokenga*, 57 Neb. 510; nor is it a case where a corporation, organized without reference to synodical relations, afterwards gave allegiance to a particular synod, and later a faction attempted to sever such allegiance, as in *Fadness v. Braunborg*, 73 Wis. 257, and *Lawson v. Kolbenson*, 61 Ill. 405.   The controversy is whether members of a corporation, created as a synodical church society, and expressly limited by its organic act as to its association with other churches, and the trust character of its property, and by the conveyance of such property to it, merely because they are in the majority, can violate that trust and be free from the power of a court of equity to remedy the wrong at the suit of the

minority. The answer to that has been indicated. The decision of the circuit court was right. The judgment must be affirmed.

*By the Court.*—So ordered.