MARTIN and others, Respondents, vs. BOARD OF DIRECTORS OF THE GERMAN REFORMED CHURCH OF PEACE OF WASHINGTON COUNTY and others, Appellants.

*February 23—March 12, 1912.*

*Religious societies: Property held in trust: Title: Possession and control: Diversion to other uses: Injunction: Incorporation of society: Denominations: Independent or Reformed church? Trial: Findings of fact: Appeal.*

1. Where property is conveyed to a religious society, or to trustees, for its use, for the promotion of the doctrines and discipline of some particular denomination, courts will prevent its diversion to the support of a different and inconsistent denomination, if even a single individual legally interested objects.
2. The fact that the society was not incorporated at the time the property was granted to it does not impair the trust thereby intended, if the legal title was granted to the trustees or members of such society.
3. A conveyance of land for church and cemetery purposes to "The Trustees of the Protestandisch Evangelisch Church and their successors in office" constituted a definite and clear grant of the property to the organization so named, and upon its subsequent incorporation the title vested in the trustees in trust for the uses and purposes for which it was conveyed and held before such incorporation.

4. The evidence in this case (stated in the opinion) is *held* to show, contrary to the findings of the trial court, that the church society of which the defendants are officers was organized and has continued to the present time as an independent religious organization; that it received grants of its property for a church, a cemetery, and a parsonage as such an independent society, and holds the same in trust for such uses; that it was at no time a Reformed church, and did not become legally affiliated with the Milwaukee Classis of the Reformed Church; and that the management and control of the temporalities are vested in its board of trustees and the members of the congregation, pursuant to its articles of incorporation.

5. Evidence included in numerous paragraphs designated as findings of fact by the trial court is merely surplusage and will be disregarded as findings, only the ultimate facts found being so considered.

APPEAL from a judgment of the circuit court for Washington county: JOHN K. PARISH, Judge. *Reversed.*

Action by plaintiffs to restrain the trustees and officers of the Church of Peace of Washington County from diverting the uses of the church property. The court made findings of facts and conclusions of law in favor of the plaintiffs, and filed a memorandum of the decision of the court which contains the following:

"That the plaintiffs are entitled to the relief demanded in their complaint; that the defendant church is and has been a German Reformed Church; that the defendants and each of them is a member of the German Reformed Church; that the church is and has been a member of the Milwaukee Classis of the Synod of the Northwest; that the *Rev. Zenk* is the legal minister and pastor of said church; that the property described in the plaintiffs' complaint belongs to the congregation of the German Reformed Church of Peace and is held by the congregation as such; that the doctrines of said Church of Peace as taught therein for upwards of forty years have been and are the doctrines of the German Reformed Church and that no doctrines of any other church have been promulgated therein; and that none but a German Reformed minister of said Synod is authorized or empowered to minister to said congregation in its church edifice."

This is an appeal from the judgment entered in accordance with such findings and conclusions of law.

For the appellants there was a brief by *O'Meara & O'Meara,* attorneys, and *A. J. Schmitz,* of counsel, and oral argument by *Mr. P. O'Meara, Mr. Thomas O'Meara,* and *Mr. Schmitz.*

For the respondents there was a brief by *Boden & Beuscher,* and oral argument by *F. X. Boden.* They cited, among other authorities, *Greek C. Church v. Orthodox G. Church,* 195 Pa. St. 425, 46 Atl. 72; *Roshi's Appeal,* 69 Pa. St. 462, 8 Am. Rep. 275; *McGinnis v. Watson,* 41 Pa. St. 9; *Sutter v. First R. D. Church,* 42 Pa. St. 503; *Kniskern v. Lutheran Churches,* 1 Sandf. Ch. 439; *Walker v. Cuthbert,* 10 Ala. 213; *Att'y Gen. v. Dublin,* 38 N. H. 459; 2 Am. & Eng. Ency. of Law (2d ed.) 24, 352–3; *Kuns v. Robertson,* 154 Ill. 394, 40 N. E. 343; *Hale v. Everett,* 53 N. H. 10; *Marien v. Evangelical C. Cong.* 132 Wis. 650, 113 N. W. 66.

SIEBECKER, J.   This is a contest between two factions of a church congregation over the possession and control of the church property.   *Rev. William C. Zenk,* who had been and at the time the action was commenced claimed still to be the pastor, was made a party plaintiff by order of the court, and he and the other plaintiffs represent one of the factions. They claim that this church congregation is a religious organization of the Reformed Church.   The defendants are the trustees and officers of the congregation and are allied with the faction which asserts that the congregation is an independent one.

The complaint alleges that the defendant congregation is a member of the religious organization known as the Reformed Church of the United States, and, as such member, is under the control and jurisdiction of the ecclesiastical judicatories of this church.   These are the Milwaukee Classis, the Synod of the Northwest, and the General Synod of the United

States. On the ground that the property of the defendant congregation is held in trust for the use of the Reformed Church organization the plaintiffs seek to restrain the defendants from diverting the property of the congregation to the uses and religious purposes of an independent church, freed from the control of the superior· bodies in the Reformed Church of the United States; from devoting it to the teaching of religious beliefs, customs, and systems of church government which are foreign to and in conflict with the ecclesiastical and religious teachings and the rules and regulations of the Milwaukee Classis of the Reformed Church; from engaging a pastor of any other denomination; from ejecting *Rev. Zenk* from the parsonage; from interfering with him in the use of the church for religious purposes; and from demanding the surrender of the keys and the church building to them.

The answer of the defendants denies that the church is a member of the organization known as the Reformed Church in the United States and that it is subject to the control or supervision of any superior religious body, and alleges that the congregation was organized as an independent, voluntary, religious organization and that the temporalities of the church are subject to their unrestricted control, as the trustees of the church organization, under the authority of the congregation and its articles of incorporation.

The following facts are without dispute in the evidence: In 1850 a voluntary religious organization was formed by German residents of the towns of Jackson and Polk in Washington county. This organization was known and designated as the Evangelical Protestant Church. In 1851 the society acquired by warranty deed lands for cemetery and church purposes, the grantee being designated as the "Trustees of Protestandisch Evangelisch Church and their successors in office." In April, 1852, a constitution was adopted by the society, the first article of which provides that the cemetery and the church shall forever remain the inalienable property

of the "Evangelical Protestant United Congregation." The
articles also provide that the first article shall not be amended,
and that two thirds of the congregation shall be present to
amend the other articles of the constitution.    In 1859 the so-
ciety voted to incorporate, the resolution adopted by the con-
gregation providing that the society should not join a synod
unless all the members should unanimously consent thereto.
In accordance with the law of that time incorporation was
duly made, the society adopting the name of "The Church of
Peace of Washington County."    In 1870 land was conveyed
to the society for a parsonage, the grantee being designated as
"The Trustees of the Protestandisch Evangelisch Church and
their successors in office."    In 1873 a provision was inserted
in the first article of the constitution providing that the par-
sonage premises, with the cemetery and church property,
should forever remain the inalienable property of the Evan-
gelical Ref. Protestant Congregation.    There was evidence
before the trial court suggesting the inference that the abbre-
viation "Ref." had evidently been inserted subsequent to the
writing of the instrument.    The ink used and the handwrit-
ing were different from the rest of the instrument.    This
amended constitution contains the provision of the former
constitution that the constitution could be amended, but that
two thirds of the congregation should be present.    In 1882
an amended constitution was prepared and was signed by
members of the congregation, but the records of the church
do not show that any notice was given of a meeting to pass
upon it, that there were two thirds of the members present,
that it was considered, or that it was adopted by the congrega-
tion.    In 1887 an alleged amendment to the articles of incor-
poration was recorded.    Objection was made to the introduc-
tion in evidence of this purported amendment on the ground
that it was not an amendment to the articles.    It is not ac-
knowledged, and there is no evidence in the records of the
congregation of its having been adopted by the congregation

or authorized by it.   In this writing the name of the church
was changed from "The Church of Peace of Washington
County" to "The German Reformed Church of Peace."   Ob--
viously, this did not effect an amendment to the articles of in-
corporation.

There was evidence before the court that soon after the
Reformation the main branches of the Protestant Church in
Germany were the Lutheran and Reformed churches; that the
main difference between these churches was in regard to the
doctrine of the Holy Communion; that in 1817 the King of
Prussia attempted to unite these two churches under the name
of "The Evangelical United Church; " that this attempt re-
sulted in the creation of a new church organization; and that.
the old organizations still persisted.   There was also evidence
that in this country the name "Evangelical Protestant
Church" would mean the same to Germans as "Evangelical
Protestant United Church," and that the churches using
either of these names in this country were generally known as:
"Evangelical Churches."

From the time of its organization in 1850 up to 1867 or
1868 the church here in question was served by pastors of no
one denomination.   Two of them are said to have been mem-
bers of either the Lutheran or the Evangelical Church, one
was an Episcopalian, and one was of unknown denomination.
Since 1867 or 1868 all of the pastors have been members of
the Reformed Church.   With the exception of two years,
when he was absent on account of illness, Rev. F. P. Leich
served as pastor of the congregation from 1870 to 1900.
Until 1878 or 1880 the congregation had no relation with any
synod or other judicatory of any church organization.   At.
this time Rev. Leich and two church members were in attend-
ance at a meeting of the Milwaukee Classis of the Reformed
Church, and he then made application for the admission of
the congregation to the Milwaukee Classis.   No action had

been taken by the congregation authorizing this application, but Rev. Leich testified that he had spoken to members of the congregation stating what he purposed to do, and that no objection was made thereto. No action was thereafter taken by the congregation ratifying this action, but the society did contribute money from funds of the church to the classis and delegates were elected to attend meetings of the classis. Several times the classis met in the church of this society. In 1904 trouble arose between the pastor, Rev. Dyken, and certain members of the church organization. This trouble ultimately resulted in the expulsion of two members of the congregation, an appeal by them to the classis, a reversal by the classis of the order of expulsion, and the adoption at an annual meeting of the congregation of a resolution severing all relation with the classis. Early in 1907 *Rev. Zenk* was unanimously elected by the congregation as pastor. In the fall of the same year, at a meeting of the congregation, a resolution was adopted terminating his pastorate, and thereafter attempts were made by the trustees to obtain possession of the church properties. As heretofore stated, this action has for its purpose the restraining of all such attempts.

The issues raised present the question of whether or not the defendants and the members of the society co-operating with them are diverting the church property and its temporalities from the uses to which they are limited by the grants of the properties and the rules and regulations of the church organization when the properties were acquired. As stated in *Franke v. Mann,* 106 Wis. 118, 81 N. W. 1014, in adopting the language used in *McBride v. Porter,* 17 Iowa, 203:

"The grantees take the title thereof subject to this limitation, and it is not in the rightful power of the minority, or of the majority, or even of the whole congregation, to divert the property from the use and trust for and with which it was conveyed. . . . The court will look to the trust specified and intended, and must disregard all questions as to majority or

as to religious creed and belief except so far as shall be necessary to ascertain the trust intended and the application of the property accordingly."

It has also been declared:

"When such use is for the promotion of the doctrines and discipline of some particular denomination, courts will prevent diversion to the support of a different and inconsistent one, if even a single individual legally interested objects." *Cape v. Plymouth Cong. Church,* 130 Wis. 174, 180, 109 N. W. 928, and cases there cited.

The fact that this church society was not incorporated at the time the land for a church building and a cemetery was granted to it does not impair the trust thereby intended, if the legal title was granted to the trustees or members of such voluntary society. *Fadness v. Braunborg,* 73 Wis. 257, 41 N. W. 84. As heretofore stated, the grant of the land in 1851 for church and cemetery purposes was to "The Trustees of the Protestandisch Evangelisch Church and their successors in office." This makes a definite and clear grant of the property to this organization, and under the incorporation of 1859, pursuant to the statutes, empowered the trustees, as the trustees of an unincorporated society, "to take into their possession and custody all the temporalities of such church, congregation, or society, whether the same may have been given, granted, or devised, directly or indirectly, to such church, congregation, or society, or to any other person or persons for their use." *Fadness v. Braunborg, supra.* Under the circumstances, it follows that the title to whatever property had been granted to this church, or acquired by it prior to the incorporation in 1859, vested in the trustees in trust for the uses and purposes for which it was conveyed and held before such incorporation.

The conveyance was to "The Trustees of the Protestandisch Evangelisch Church and their successors in office." It therefore is to be determined whether the purpose and intent

of the members of this church organization was to organize an independent religious body or one connected with and forming part of other and superior bodies or judicatories, such as the classis and synod of the Reformed Church of the United States. The trial court found that this congregation or church society was organized as a Reformed Church congregation and that it was a member of the Milwaukee Classis and of the Synod of the Northwest of the Reformed Church of the United States. These are the only ultimate facts found, and the action of the court in including the evidence in sixty separate paragraphs, designated as findings of fact, was mere surplusage and they must be disregarded as findings. We have heretofore set out the undisputed facts, which are the facts upon which the litigated questions turn. From these it appears that the society in its constitution of 1852 did in form declare that its property should remain inalienably in the ownership of the Evangelical Protestant United Congregation, that any person residing within the prescribed limits and professing the Evangelical Protestant religion should be eligible to membership upon contributing to the support of the church in the manner provided, and that all members should stand upon an equality of right as to the privileges and benefits of the organization. The evidence shows that the church government was vested in the congregation and its board of trustees, and that the board was elected by the members of the church at stated meetings for prescribed terms of office. In the administration of its religious and temporal affairs, from its inception, the congregation acted independently of any other organization. At a meeting of the congregation in 1859, at which it was decided to incorporate the society, a resolution was adopted declaring that the society was not to join any synod unless all the members should unanimously consent thereto. It also appears that the congregation called and accepted ministers affiliated with various Protestant sects, and that after 1867 or 1868 ministers of the Reformed

Church were engaged. We are unable to perceive how, in the light of these undisputed facts, it can be held, as found by the trial court, that the court was organized as a Reformed church. The fact as found by the circuit court, that many of the members of the society were adherents to the tenets of the Reformed Church, cannot control, for it also appears that many of the members were not of this persuasion. As stated by one witness, many sects were represented in the membership, and moreover, after 1852, by constitutional provision, admission to membership was to be passed upon solely by the trustees, if the applicants professed the Evangelical Protestant religion as declared in article 1. This certainly cannot, under the evidence adduced, be held to have restricted membership to those who professed the tenets of the Reformed Church of the United States. It appears that from 1867 or 1868 to the time of the commencement of this action only ministers of the Reformed Church were engaged, that they and others of this denomination dedicated the new church building, employing the ritual and service of this denomination; that in 1878, while the pastor and two members of the church attended the meeting of the Milwaukee Classis of the Reformed Church, the pastor made application to join this classis and that the application was granted; that the congregation, however, at no time prior or subsequent thereto, authorized or ratified joining this classis, though it contributed money for its support and selected delegates to attend its meetings. It is true that from the time religious services were held by the congregation it used the Heidelberg Catechism and much of the ritual and the service books of the Reformed Church. All these facts and circumstances, however, did not operate to effect an organization of a Reformed church or to change it from an independent church to one connected with the Reformed Church. It is manifest that these matters could be adopted by the congregation, if it so desired, within the purposes of its independence. If it had been pur-

posed to thereby change from the original independent organization to membership in the classis and synod of the Reformed Church, the object would have failed in law, because that would amount to a diversion of the use of the church property from the trust imposed on it in the grant to the independent society, which received and held it in its corporate capacity.

We consider that the record clearly shows that this church society was organized and has continued to the present time as an independent religious organization; that it received grants of its property for a church, a cemetery, and a parsonage as such an independent society, and that it holds the same in trust for such uses; that the society was at no time a Reformed church and that it did not become legally affiliated with the Milwaukee Classis of the Reformed Church; and that the management and control of the temporalities are vested in its board of trustees and the members of the congregation, pursuant to its articles of incorporation. The evidence shows that the plaintiff *William C. Zenk* was by a majority vote of the congregation removed from the pastorate of the congregation and that he wrongfully withheld from the trustees the possession of the parsonage property, the key to the church, and that he and the plaintiffs wrongfully assert control over the temporalities of the church and have prevented the trustees from exercising an undisturbed control over the same. We are of the opinion that the plaintiffs have established no cause of action and that their complaint must be dismissed.

The defendants are entitled to judgment upon their counterclaim, adjudging that the religious organization of this church is an independent one; that they are entitled to possession of the temporalities of the church, freed from molestation and interference, and to be held by its board of trustees under the authority vested in them by the articles of incorporation and religious organization; that *William C. Zenk* was

duly discharged from the pastorate of the church by a vote of the congregation; and such further relief as may be necessary to enforce the rights of the trustees of the church and the congregation, pursuant to the views expressed in this opinion.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded to the trial court with directions to enter judgment dismissing plaintiffs' complaint, and to award judgment in defendants' favor on the counterclaim, as indicated in the opinion. No costs are to be allowed to either party. The plaintiffs are to pay the clerk's fees in this court.