RUHBUSH and others, Appellants, vs. BUSS and others,
Respondents.

*April 11—October 14, 1924.*

*Religious societies: Diverting property to unauthorized use: Amendment of by-laws of congregation: Presumption after lapse of time.*

1. A lapse of twenty-seven years without challenge after the
   adoption by a religious society of a new set of by-laws (denominated a new constitution), while not conclusive, indicates
   that the congregation did not understand that the organic
   law of the society was being violated by the adoption of the
   new constitution. p. 444.
2. The first constitution—in effect the by-laws—of a religious
   society the members of which had organized an independent
   congregation capable of affiliating with any synod adhering
   to the Unaltered Augsburg Confession, could be altered so
   long as the property of the congregation was not diverted to
   a synod which did not accept the said confession; and the
   requirement of the constitution that ministers and teachers
   should be called from the Missouri synod having been changed
   twenty-seven years ago to permit the calling of ministers
   belonging to an "orthodox synod," a majority of the congregation were within their rights in calling a preacher from
   the Ohio synod, which is an orthodox synod. p. 448.

APPEAL from a judgment of the circuit court for Shawano county: A. H. REID, Judge. *Affirmed.*

This is a controversy between the members of the *St. Elias Congregation,* organized and incorporated in 1881. It is the contention of the plaintiffs that the congregation was originally established as a Missouri Synod Congregation, while the defendants contend that it is an independent congregation with the right to determine by a majority vote to which, if any, synod it shall become attached. The controversy arises in this way: The defendants called one *Reverend Carl Stubenvoll,* who was affiliated with the Ohio synod, as pastor of the congregation; plaintiffs claim that this amounts as against them to a wrongful diversion of the property of the congregation, and this action is brought

to restrain the defendants, who are in a numerical majority in the congregation, from so using the church property.

The facts cannot be more clearly or briefly stated than by giving the findings of the trial court, which are as follows:

"(1) That the defendant *St. Elias Congregation* was organized and incorporated in 1881, the certificate of incorporation was dated February 3, 1881.

"(2) That the deed by which the real estate belonging to the congregation was conveyed to it did not indicate a conveyance for the purpose of any particular synod, but simply 'to be used for church lot and cemetery purposes.'

"(3) That on the 3d day of February, 1881, the incorporators signed a certificate of incorporation which was recorded February 4, 1881; that said certificate did not incorporate a congregation of any particular synod, but only 'a religious society of the Lutheran Church, Unaltered Augsburg Confession.'

"(4) That on February 20, 1881, the incorporators and their associates, constituting the society, duly adopted by-laws or rules for the government of the society, which they denominated a constitution, and which for convenience will be so denominated in these findings; that by said constitution they provided in the first paragraph that only ministers and teachers of the Missouri synod should be called as long as said synod adheres to the pure doctrine of the Gospel and the correct administration of the Holy Sacrament.

"(5) That said constitution in its second paragraph provided that the society adopted the entire canonical books of the Old and New Testaments, the Articles of Smalkald, Dr. M. Luther's Large and Small Catechism, and the Formula of Concord, Unaltered Augsburg Confession, as their confession of faith.

"(6) That by said constitution, in its third paragraph, they provided for an election of trustees and a president, secretary and treasurer, and further provided that 'These first named three paragraphs cannot be changed as long as three members cling to the teaching stated in paragraphs 1 and 2.'

"(7) That at that time there were and ever since have been several synods of the Lutheran Church in the United

States, to each of which there belonged and still belong a large number of Lutheran congregations, and among these synods were the two commonly known as the Missouri synod and the Ohio synod. Each of said two synods consisted of an organization elected by delegates sent to the synodical conference by each congregation belonging to the synod, and only those congregations who became members of the synod and sent delegates to the synodical conference had any voice in determining questions brought before the conference. Both the Missouri and Ohio synods have adopted the same canonical sacred books and same symbolical books and the Unaltered Augsburg Confession as their confession of faith, but they differ in some fundamentals in interpretation thereof, and each maintains its own theological seminaries and publications and forms of worship and there is no interchange between them.

"(8) That defendant, *Elias Congregation,* never became a member of any synod, and at least twice, upon being requested, expressly refused to become a member of a synod.

"(9) That at a meeting of the congregation held October 6, 1895, a committee of five members, including the pastor, was appointed to draft a new constitution, so called, and that at a like meeting, on January 1, 1896, a resolution was adopted to the effect that a new constitution be adopted.

"(10) That at a special meeting of the congregation held February 9, 1896, at which twenty-eight members were present, the total then being about thirty-five, the said committee presented a new constitution, and a motion was carried by a vote of twenty to eight to proceed to consider and vote upon the new constitution, paragraph by paragraph.

"(11) That thereupon paragraphs 1 and 2 of the new constitution, which are evident substitutes for paragraphs 1 and 2 of the first constitution, were adopted by the unanimous vote of the twenty-eight members present. A new paragraph numbered 4, which was an evident substitute for the original paragraph 3, was also adopted unanimously.

"(12) That by the adoption of these new paragraphs the members pledged themselves to call only such ministers and teachers as either belonged to an orthodox synod or have been examined by the officers of such a synod and have been found capable of teaching; and they acknowl-

edged the entire canonical books of the Old and New Testaments as God's revealed word, and all of the symbolical books of the Evangelical Lutheran Church (Book of Concord of 1580) as the clear exposition of God's word, according to which the teaching must be examined and conducted, and all eventual doctrinal controversies decided.

"(13) That all other paragraphs of the new constitution providing for the government of the congregation, its methods of calling meetings, its manner of formulating decisions binding upon officers and the congregation, and other similar matters, were adopted either unanimously or by nearly a unanimous vote, and thereupon it was decided by an unanimous vote to have the new constitution printed and to observe it as written, and said new constitution was thereafter distributed to all members and all new members were furnished with copies when received into the church.

"(14) That the record of the aforesaid meetings does not show the method of calling the same, and the evidence received on the trial throws no doubt on the regularity of calling or holding said meetings.

"(15) That since the adoption of the new constitution the congregation has built a substantial brick church, and have jointly with another congregation constructed a parsonage, which properties with the original grounds constitute the present properties of the church. Said structures were paid for by funds contributed to by as many members who were received after the adoption of the new constitution as members previously belonging to the congregation. That as many members of the congregation have been received since the adoption of the new constitution as were received prior thereto.

"(16) That the new constitution, from and after its adoption, was observed and regarded as the governing rules of the congregation.

"(16½) That the congregation called, and were served by, only ministers of the Missouri synod until the summer of 1923, when, after a disagreement with their then minister, the congregation voted to call *Rev. Carl Stubenvoll,* a minister of the Ohio synod, to be the minister of the congregation; that the plaintiffs objected thereto and served notice on the new minister of such objections before he held any services.

"(17) That both the old and new constitutions were and are entirely consistent with the doctrines of both the Missouri and Ohio synods.

"(18) That the defendant congregation never became a member of any synod.

"(19) That the meeting of the congregation at which it was decided to extend a call to the defendant *Rev. Carl Stubenvoll* and the meeting at which the call was actually extended were neither called in the manner provided by the constitution, but that more than two thirds of the members were present at such meetings."

Upon these findings the trial court concluded as a matter of law that the congregation was incorporated as a religious society of the Lutheran Church, Unaltered Augsburg Confession, but was not incorporated as a congregation of any particular synod, and that funds donated for congregational purposes have not been dedicated to the use of any particular synod; that there has been no diversion of the property of the congregation to an unauthorized use; that the constitution adopted in 1896 is in full force and effect as the constitution of the congregation, and under said constitution the congregation has the right to extend a call to a minister of the Ohio synod as much as it has a right to extend a call to a minister of the Missouri synod, and while the call extended to *Reverend Carl Stubenvoll* was irregular because not called in the manner provided by the constitution, such a call is not in violation of any of the rights of the plaintiffs.

From the judgment entered accordingly the plaintiffs appeal.

For the appellants there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein*.

For the respondents there was a brief by *Dillett & Fischer* of Shawano, and oral argument by *C. F. Dillett*.

The following opinion was filed May 6, 1924:

ROSENBERRY, J.   The principal question raised upon this appeal is this: Was the corporation incorporated as a con-

gregation of the Missouri synod and its property dedicated to the use of the Missouri synod? It is to be noted that the trial court held that the constitution of 1896 was legally adopted and that by the express language of that constitution the members of the congregation are entitled to call a minister or teacher belonging to an orthodox synod or such as have been examined by the officers of such synod and have been found capable of teaching. If it be conceded that the congregation had the right as against a minority thereof to adopt this constitution, it seems too plain for argument that the congregation had the right to call a minister from the Ohio synod because it is admittedly an orthodox synod. The congregation accepted the new constitution, and acted under it for twenty-seven years without any question being raised in respect to the legality of its adoption. We think the trial court correctly held that under such circumstances the regularity and legality of the meeting must be presumed. 14 Corp. Jur. 377, note 65, and cases cited; 3 Fletcher, Corp. pp. 2720, 2774, and cases cited.

It appears to be undisputed that the Missouri synod was incorporated in 1848 under the laws of the states of Ohio, Missouri, and other states, and from the day of its incorporation to the present time it has always promulgated a certain interpretation of the Christian faith, and there has been no change whatever in its construction and interpretation of the sacred writings. The Ohio synod was incorporated under the laws of the state of Ohio in 1810 and it has maintained a separate and distinct synodical existence. Both synods, however, accept the Unaltered Augsburg Confession and to a considerable extent the same sacred writings, although they put different interpretations upon these writings.

The *St. Elias Congregation* was incorporated under sec. 1991, R. S. 1878. By the provisions of sec. 1991 the incorporators were authorized "to organize themselves into a religious society of the —— church (sect or denomina-

tion, or other description), located in (name of town, village or city), in the county of ———." The incorporators in this case inserted in that place the following: "have and organize themselves as a religious society of the Lutheran Church, Unaltered Augsburg Confession, located in the town of Herman, in the county of Shawano." Upon their incorporation they proceeded under this statutory power to adopt by-laws which were designated "Constitution of the Evangelical Lutheran Elias Congregation, Unaltered Augsburg Confession, of Town of Herman." The provisions of the first article of this constitution are as follows:

"The members of this congregation pledge themselves to call only ministers and teachers of the Missouri synod as long as said synod adheres to the pure doctrine of the Gospel and the correct administration of the Holy Sacraments."

By article 3 it was provided:

". . . These first named paragraphs [1, 2, and 3] cannot be changed as long as three members cling to the teaching stated in paragraphs 1 and 2; they keep the entire property belonging to the *Elias Congregation* whether movable or immovable."

Article 2 was as follows:

"The members of this congregation adhere to as their confession: the entire canonical books of the Old and New Testaments, the Articles of Smalkald, Dr. M. Luther's Large and Small Catechism, and the Formula of Concord, Unaltered Augsburg Confession."

Was the congregation and its property by this procedure unalterably dedicated to the Missouri synod? If the incorporators had included in the articles of incorporation the words "of the Missouri synod," the case would fall within the rule of *Franke v. Mann*, 106 Wis. 118, 81 N. W. 1014, where the title named in the articles of incorporation was "German Evangelical Church of the Synod of North America, for the purpose of forming a religious society of such

sect and synod;" nor are we concerned here with the question of property upon which a trust has been impressed by the deed of conveyance, as in *Fadness v. Braunborg,* 73 Wis. 257, 41 N. W. 84. Nothing was said in the deeds of conveyance which indicated that it was to be dedicated to the Missouri synod. In this connection the language of paragraph one of the original constitution is significant. The members pledge themselves to call ministers of the Missouri synod so long as said synod adheres to the pure doctrine of the Gospel and the correct administration of the Holy Sacrament. Under the articles of incorporation and the constitution, who is to determine whether or not the Missouri synod continued to adhere to the pure doctrine of the Gospel? Manifestly, the Missouri synod could not be called upon to determine that question and so act as a judge in its own case. It would seem quite clear that the congregation by the language of this article reserved to itself the right to make that determination. If that is true, the congregation was independent. In fact, if the congregation desired to organize an independent congregation which might affiliate itself from time to time with any synod adhering to the Unaltered Augsburg Confession, it is difficult to see how they could have gone about it in a more definite and satisfactory manner than that which they adopted. That being the case, the constitution of the congregation, which in effect corresponds to its by-laws, could be altered so long as the property of the congregation was not diverted to a synod which did not accept the Unaltered Augsburg Confession. That such was the understanding of the congregation is made evident from the fact that the new constitution departed from the old constitution in that it provided that the congregation might call ministers and teachers who belonged to an "orthodox synod or have been examined by the officers of such synod and have been found capable of teaching." This was a clear departure from the first constitution, which required the ministers to be called from the

Missouri synod.   The fact that this constitution was sub-
mitted to without challenge for twenty-seven years indicates
that the members of the congregation did not understand
that the organic law of the society was being violated by
the adoption of the new constitution.   This of course is not
conclusive, but it is very persuasive as to what the congre-
gation understood the legal effect of their articles of incor-
poration to be.

The original by-laws or constitution also contained a
clause to the effect that "in case of a doctrinal controversy
the congregation calls upon the synod of Missouri, Ohio,
and other states [Missouri synod] as judge."   This is
thought to be of some significance.   It appears, however,
that the distinction between those congregations which in
fact joined the synod or were dedicated to it and those
which did not join it was very slight.   In case a Missouri
church did not belong to the synod it had all the rights of
any other congregation except that its representative could
not vote.   The pastor of an independent congregation might
attend the meetings of the synod, engage in discussion as
to church, business, and doctrinal matters, but the congre-
gation had no vote.   In any case the synod had no jurisdic-
tion over the congregation except that it acted in an advisory
capacity.   The evidence shows that congregations which
had not affiliated with the Missouri synod frequently called
upon that synod to settle disputes.   The attitude of the
congregation is further indicated by the fact that on two
occasions they refused to join the Missouri synod, and as
a witness said, "The congregation was always against it."

The determination of this case rests very largely upon
questions of fact.   It is quite apparent that the congrega-
tion did not intend to dedicate itself to the Missouri synod.
The original by-laws or constitution, as they are designated,
were duly amended, and in accordance with the new by-laws
a call might be later extended to a preacher and teacher of
an orthodox synod.   There is no question that the Ohio

synod is an orthodox synod. The trial court correctly found that there was not a dedication of the congregation's property to the Missouri synod and that the majority of the members were within their rights in calling a preacher from the Ohio synod.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on October 14, 1924.